### No. 11,599.

THE STATE OF LOUISIANA EX REL. B. J. KUHLMAN vs. EMILE ROST, JUDGE.

When a party seeks, through the arm of the judiciary, to direct or control or regulate the performance of public duties by officers of another department of the government, pleadings of an exceedingly specific character, showing exceptionally strong facts in aid of the relief asked, must be presented to a court to justify its assuming jurisdiction.

Mere conclusions of law, or conclusion of ultimate facts, will not suffice; nor should the pleader take anything by failing to bring to the knowledge of the

court the condition of affairs which he must be aware will eventually be advanced in defence.

This court takes judicial notice of Act No. 125 of 1877, Ex. Sess., and that the same has not been repealed.

He who has qualified as a statute officer, in an office, the appointment to which is vested in the Governor, is entitled *prima facie* to possession of the office.

APPLICATION for Writ of Prohibition.

---

*H. N. Gautier, J. L. Gaudet* and *E. Howard McCaleb* for Relator.

---

*Gustave V. Soniat* for Respondent.

---

On October 6, 1894, the Governor of the State appointed and commissioned B. J. Kuhlman police juror, Ward 5, parish of St. Charles, *vice* L. A. Cambre, *removed.* Kuhlman took his oath of office on October 10 following, on which day he attended a meeting of the police jury of the parish. The jury was composed of H. L. Young, T. C. Madere, A. E. Picard, *vice* LeSassier, *removed;* P. M. Kenner, *vice* Sarpy, *removed,* and the relator, Kuhlman, the members of the jury, Young and Madere, meeting with and recognizing the newly appointed jurors, and the police jury, as thus composed, organized and elected a supervisor.

Cambre filed a petition for injunction, alleging that he was appointed by the Governor as a police juror of the Fifth Ward of St. Charles parish, on June 3, 1892. That said appointment was duly confirmed by the Senate, and that he had duly taken his oath of office as such. That since his induction into office he had always performed, and still continued to perform to the best of his ability, all the duties incumbent on him. That by virtue of his said appointment and confirmation, his term of office did not expire before the next general election, to be held on the first Tuesday next following the third Monday in April, 1896. That he is entitled to all the fees, emoluments and perquisites attached and belonging to said office up to said date.

That at the last meeting of the police jury, held on the 11th day of September, 1894, the police jury adjourned to the next regular meeting; the first Monday in November, 1894. That since he has not received *any notice* from the secretary of the police jury, or any

other officer, apprising him of any *extra meeting* of the police jury.
That he has never been officially apprised of his removal from said
office, and has not been guilty of any crime or cause that should
warrant his removal, and therefore is in actual and physical pos-
session *de jure* and *de facto* of said office.    That he is informed
and verily believes that one B. J. Kuhlman illegally and wrongfully
claims the aforesaid office of petitioner, and in conjunction with
others did unlawfully meet and assemble in the parish of St. Charles
on the 10th day of October, 1894, and did endeavor to transact busi-
ness as members of the police jury of the parish of St. Charles.
That in order to properly protect the possession of the petitioner in his
aforesaid office against the interference of claimant aforesaid, it was
necessary that an injunction should issue ordering and commanding
the said Kuhlman to desist and refrain from interfering with peti-
tioner in the discharge of his duties as police juror of the Fifth Ward
of St. Charles parish, and particularly that he be restrained, enjoined
and prohibited from attending, sitting or in anywise acting as police
juror as aforesaid at any time or place, and more particularly the
next regular meeting of the police jury, on the first Monday of No-
vember, 1894, and until the title to said office shall have been judi-
cially determined.

A writ of injunction issued as prayed for.

Petitioner executed a bond in an amount of two hundred and fifty
dollars in favor of Kuhlman to secure to him the payment of all
such damages as he might recover in case it should be decided that
the injunction was wrongfully obtained.   The interest which the
public might have in the issues raised was ignored, and not at-
tempted to be safeguarded in the bond.

Failing in his application to the District Judge to set aside the writ
of injunction, the relator, Kuhlman, prayed for a writ of prohibition,
setting forth that on or about the 17th day of October, 1894, one L.
A. Cambre, alleging and representing that he had been illegally re-
moved from said office of police juror, and that relator was the
unlawful, though commissioned and qualified, incumbent in full
possession of said office, performing the duties thereof, obtained
from the Judge of the Twenty-first Judicial District Court for St.
Charles parish, on such *ex parte* showing, a mandatory writ of injunc-
tion, prohibiting relator from in any manner performing the duties
of his said office, or attending to the meetings of said police jury,

until such time as the title to said office should have been judicially determined, thus practically ousting relator from office without judicial determination of relator's right to his possession of said office. That said Cambre has not, nor has any person, judicially claimed the said office adversely to relator. That said judge and court persist in usurping jurisdiction and refuse to revoke the said order and to set aside the injunction. That relator has no adequate remedy other than the writ of prohibition to be issued by the Supreme Court. That the cause is not an appealable one, the amount involved being less than one hundred dollars.

The District Judge in answer says that no proceedings were taken in the case until Tuesday, October 23, 1894, when the relator, through his counsel, by *ex parte* motions in open court, moved for an order setting aside the writ of injunction for want of jurisdiction, *ratione materiæ.* That no plea to the jurisdiction of respondent's court had previously been filed or offered. That respondent refused to take immediate action on said motions, but requested that the same should be tried by a rule *nisi*, and contradictorily with the plaintiff. That relator insisted upon immediate action upon said *ex parte* motions, which motions for that reason were overruled by respondent, and that, thereupon, the relator, through his counsel, notified respondent that application would at once be made to this court for writs of prohibition and *certiorari*. That the question of jurisdiction *vel non* has never been passed upon by him, or even been properly presented. That the proceedings held before respondent's court were solely injunction proceedings, and that the writ issued in this case was granted on the sworn allegations of the plaintiff that he was in the lawful possession of the office of police juror of the parish of St. Charles. Respondent avers that he has never usurped jurisdiction, and that he has never refused to revoke his said order or set aside the injunction; that he has not tried to control or interfere with the Executive Department of the State. That under Art. 11 of the Constitution of the State, any incumbent of a public office is entitled to appeal to the courts to be maintained in the possession of his office pending the judicial determination of the right and title to said office. That it is only in proceedings having such determination for their object that the right of removal of police jurors by the executive can be presented. That under Art. 201 of the Constitution of the State provision is expressly made for the manner

and form of removal from office; and, finally, that the proceedings instituted in respondent's court being solely injunction proceedings, no such question was or could have been presented in said proceedings. That respondent has acted within the powers vested in District Judges by the Constitution and laws of the State, and that relator is not entitled to the relief asked for.

The opinion of the court was delivered by

NICHOLLS, C. J.    The proceeding of Cambre in the matter of the injunction sued out, which has been brought before us in this case, notwithstanding the use of the name of the State in its title, is a private suit of Cambre against Kuhlman. Its object, however, is not so much to stay the payment to Kuhlman of any moneys which, but for the injunction, would be made to him under color of office as a police juror, as through the arm of the judiciary to direct, control and regulate the performance of public duties by officers of another department of the government. When such a result is sought to be brought about, pleadings of an exceedingly specific character, showing exceptionally strong facts in aid of the relief asked, must be presented to a court to justify its assuming jurisdiction. Mere conclusions of law or conclusions of ultimate facts will not suffice, nor should the pleader take anything by failing to bring affirmatively to the knowledge of the court the condition of affairs which he must be aware would eventually be advanced as those upon which the defendant was basing and grounding the claims and pretensions under which he was acting. It is his duty in such a proceeding to state, as far as possible, the whole case, to the end that the court may be completely advised in the premises. Nothing should be held back which, if known to the court, would probably influence it in determining the question of its own powers. Usually vague and general pleadings are not fatal to a demand. Imperfect statement of a cause of action is ordinarily remedied by amendment on exception taken, but in matters of the present character we are of the opinion that the pleadings in the case affect the jurisdiction, and that a court should not act at all, unless a cause of action is plainly set out, and is manifest on the face of the papers, and we are of the opinion that it is authorized of its own motion, and in spite of the allegations of the petition for the injunction, to take cognizance of matters of which it can legitimately take judicial notice which enter as

factors in determining the question of its own powers and duties. The court should be first assured of its own jurisdiction. If a District Judge should inadvertently have assumed it under circumstances where he should not have done so, we have the power, and it is our duty under our supervisory control over the lower courts, to set aside the orders given by him. It is of the utmost importance that the different departments of the State should not clash, but that each should pursue its legitimate functions free from interference from the other. That there may be cases of such a character as to force the judiciary to the discharge of its own duty to review, to declare null and void and to set aside acts of the Legislature or Executive Departments is beyond question; but as we have said the occasion which would require it to do so at the instance of an individual citizen by way of injunction which would at once *ex parte* restrain and change (temporarily at least) the course which public affairs would naturally have followed but for the injunction must be clear and patent.

Private interests should yield to those of the public. In the case at bar it is clear that Cambre, after having been appointed, commissioned and qualified as a police juror for the parish of St. Charles by the Governor, was *subsequently removed by him*, and the relator, Kuhlman, appointed in his place. That simultaneously two other police jurors were removed by the Governor and others appointed in their places. That the three new appointees qualified under their commissions, and presenting themselves with their commissions and oaths of office to the remaining police jurors, they were recognized by the latter as police jurors, and a meeting of the police jury was organized, in which the new appointees participated, selecting or electing a supervisor of election at such meeting, and that the injunction which was issued was applied for and granted subsequent to this meeting.

In his petition for injunction, Cambre alleges that "one B. J. Kuhlman illegally and wrongfully claims the office of police juror" (to which he had himself been appointed), but he does not inform the court, as he should have done, that Kuhlman claimed the office under a commission from the Governor of a date subsequent to that of his own commission, and that the subsequent commission was issued by reason of his own removal from office by the Chief Executive; and while he alleges that Kuhlman, in conjunction with

others, did unlawfully meet and assemble in the parish of St. Charles on the 10th of October, 1894, and did endeavor to transact business as members of the police jury of St. Charles, he does not inform the court that the persons with whom he acted in conjunction were two of the police jurors of the parish of St. Charles, holding by undisputed title, and two other·persons, who, having been appointed by the Governor as police jurors, had qualified under the commissions issued to them, and who were recognized, as was Kuhlman, by the older members as police jurors of the parish. He avers that "those parties did unlawfully meet and assemble as police jurors," but he does not state how or why the meeting was unlawful. The ground for that attack is, we infer, to be found in the allegation that the police jury, when it had adjourned before, had adjourned to its next regular meeting, and that he had not been notified of a called meeting, nor notified of his having been removed from office as a police juror. No other reason seems to have been assigned. There is no charge made in the petition that the Governor was without *power or authority* to remove a police juror. If any such claim was intended to be advanced, it was merely inferentially and consequentially advanced under the allegation that, by virtue of his appointment and confirmation, his term of office did not expire before the next general election, to be held on the first Tuesday next following the third Monday in April, 1896, and we do not think this indirect general allegation fairly raised an issue as to the Governor's legal or constitutional power of removing a police juror from his office.

The issue that he tendered was rather that the Governor had acted improperly, and without cause, than that he had acted without authority—an issue which (granting the *power* to remove) was one which should not have been raised, and could not be passed upon by the court. We take judicial notice of Act No. 125, Ex. Ses. of 1877. That act has not been repealed. Whether or not it has become inoperative by reason of the adoption of the Constitution is not a question to be lightly raised, and on general indirect allegations, nor to be raised by the court itself. This statute has been constantly acted upon by the executive of the State since 1880. The official action of the head of the Executive Department is presumed to be within the scope of his authority. This presumption is sufficiently strong under the statute cited to entitle a person who has qualified as a statute officer in an office, the appointment to which is vested

in the Governor *prima facie*, to possession of the office. If he is to be kept out of possession at all, it must be, as we have said, under exceptional circumstances, specially set forth, and under a direct issue as to the power of the Governor. It is shown in this case that not only had Kuhlman been appointed and qualified as police juror, but he had been recognized as such by the other members of the jury, and that together they had organized and held a meeting of that body. Kuhlman had actually gone into possession of the office, and the allegation that Cambre feared he would seek to take forcible possession of the same is therefore without foundation. No action seems to have been taken by the jury after its adjournment until the meeting in which Kuhlman participated, therefore no act of possession of the office by Cambre is shown after his removal by the Governor. If the Governor had the *power* to remove him, there was no necessity for official notification to him of the removal to bring it about. The removal of itself operated a divestiture of the office, at least for the purposes of this suit. Had intermediate action taken place before notice in which Cambre had participated in ignorance of his removal, and were the validity of action taken at that time and under these circumstances contested, a different question would arise. If Cambre was removed from office he was not entitled to notice of a called meeting of the jury. The legality of the police jury as a body, as it met at the meeting in which Kuhlman participated, and the legality of the meeting, can not be collaterally raised or disposed of in the injunction suit.

We are of the opinion that the District Judge in taking jurisdiction in the matter of the petition praying for an injunction, and in issuing the injunction he did, erred, and that when the want of jurisdiction was called to his attention and urged, he should have at once discharged the injunction. He could have done so of his own motion. There was no necessity for action to be taken contradictorily with Cambre.

In deciding this case we take occasion to refer to the views expressed by the Supreme Court of Alabama in Beebe vs. Robinson, 52 Ala. 66, and to the case of Cameron vs. Parker, 38 Pac. Rep. 14 *et seq.*

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the writ of prohibition which issued in this matter be perpetuated, and that the injunction granted by the District

Judge of the Twenty-first Judicial District Court, of the State of Louisiana for the parish of St. Charles, in the matter of L. A. Cambre vs. B. J. Kuhlman No. 80 of the docket of that court, be and the same is hereby set aside and discharged.

Rehearing refused.