We do not consider it necessary to comment upon the cases cited by counsel. All of them apply the common-law doctrine of purpresture, without the restraint which is imposed upon us, to some extent, by our codal provisions.

We find no error in the judgment appealed from, and, for the reasons stated, it is affirmed, at appellant's cost.

(117 So. 814)

No. 29244.

## STATE ex rel. FERRY v. BUCHLER.

### In re FERRY.

June 4, 1928. Rehearing Denied July 2, 1928.

A. T. Higgins, of New Orleans, for relator.

J. E. Fleury and C. A. Buchler, both of Gretna, for respondent.

BRUNOT; J. In his application to this court for a writ of certiorari relator alleges that on February 29, 1928, he filed a suit in the Twenty-Fourth judicial district court against Peter Buchler, claiming therein that he (relator) was duly appointed a member of the board of commissioners of the Fourth Jefferson drainage district, of Jefferson parish, La., a political corporation; that he qualified as such commissioner and is the acting incumbent of that office; that Peter Buchler asserts title to the said office by virtue of an alleged appointment by the police jury of Jefferson parish, and, unless restrained by injunction, he will usurp and take possession thereof. Relator alleges that the district judge issued a restraining order and a rule to show cause why a preliminary injunction should not be granted; that the rule was heard, the restraining order was recalled, the application for a preliminary injunction was denied, and a suspensive appeal from the judgment on the rule was refused.

The writ of certiorari issued, the record has been sent up, and the respondents, the judge and defendant, have filed separate returns to relator's application.

The rule to show cause, in the district court, why a preliminary injunction should not be granted, was submitted on an agreed statement of facts, from which we quote the following:

"It is admitted by counsel for plaintiff and defendant as follows: That the plaintiff herein, E. R. Ferry, was duly appointed as a member of the board of commissioners of the Fourth Jefferson drainage district on February 7, 1923; that he qualified as such and exercised the duties of said office; that his term of office ex-

pired on February 7, 1928; that at a regular meeting of the police jury of the parish of Jefferson held on February 8, 1928, the said E. R. Ferry was recommended for reappointment by 46 landowners having a total acreage of 22,776 acres, that acreage being a majority of the total acreage of the said district, and, further, that the said E. R. Ferry possesses all of the qualifications to hold the said office.

"It is further admitted that the defendant herein, Peter Buchler, possesses all of the qualifications necessary to hold the said office; that the said Peter Buchler was recommended for appointment as a member of the board of commissioners of the Fourth Jefferson drainage district by 348 landowners within the said district; * * * that at a regular meeting of the police jury of the parish of Jefferson held on February 8, 1928, an ordinance was adopted by a vote of six to two and one blank vote appointing said Peter Buchler as a member of board of commissioners of the Fourth Jefferson drainage district on the recommendation of said petition; that on the same day, at 3:30 o'clock p. m., the said Peter Buchler took the necessary oath and same was filed with the secretary of the Fourth Jefferson drainage district and also with the clerk of court for the parish of Jefferson, said oaths being filed prior to 7 o'clock p. m., when order was signed by the judge of the district court granting restraining order and rule to show cause."

■ The admissions of relator contained in the foregoing statement of facts show that, when the suit to enjoin Peter Buchler from exercising the powers and performing the duties of commissioner of the Fourth Jefferson drainage district was filed, relator was not then in possession of, or the incumbent of, that office. It follows that the relief asked for, in his suit, which is based upon the alleged invalidity of the appointment of Buchler to the office, is an attempt by one claiming an office to inquire into the title of one admitted to be a de facto officer, in an injunction proceeding. The rule that title to office cannot be inquired into in an injunction proceeding is too well recognized to require citation of authority. In the case of Guillotte v. Poincy, 41 La. Ann. 333, 6 So. 507, 5 L. R. A. 403, quoting from the syllabus, it is said:

"Proceedings by injunction cannot be used as a means of determining disputed title to office; but they may be properly used to protect the possession of officers de facto against the interference of claimants whose title is disputed until the latter shall establish their title by the judicial proceeding provided by law."

We might end the case here, but this matter presents an issue which we think it advisable to pass upon.

■ The appointment of drainage district commissioner is made pursuant to the provisions of section 7 of Act 85 of 1921. The pertinent part of the section follows:

"The appointments of commissioners by the police jury shall be made upon the recommendation of a majority in number of acres of the land owners of said proposed drainage district, or a majority in numbers of the landowners of such districts where the district contains forty or less landowners; where the proposed district has more than forty landowners embraced therein, then the said appointments shall be made upon the recommendation of twenty-five of the landowners of said district. When there is a contest over the appointment of commissioners, the police jury shall give the appointment to those commissioners who are recommended by landowners owning the majority in number of acres of land in said district, or who are recommended by a majority in number of the landowners in said district, in the discretion of the police jury."

Relator and respondent Buchler were contestants for the appointment as commissioner of the Fourth Jefferson drainage district. Relator was recommended by 46 landowners of the district, who owned three-fifths of the total acreage thereof. Respondent Buchler was recommended by 348 landowners of the district. There are more than 5,000 landowners in the district.

Relator has interpreted section 7 of Act 85 of 1921 to mean that in the event of a contest, the police jury has no discretion in the matter of appointment of commissioners, except where one of the contestants is recommended by the owners of more than one-half of the acreage of the district and the other is

recommended by an actual majority of all of the landowners of the district.

This court has frequently had occasion to interpret articles of the Constitution and statutes of the state containing provisions of similar import to those found in section 7 of Act 85 of 1921, and it has studiously avoided an interpretation which would defeat the purpose and intent of the lawmaker. The recommendation of a person to the office of drainage commissioner is in the nature of an election and must be governed by the law applicable thereto. The general rule is stated in C. J. p. 205, as follows:

"Qualified electors who failed to vote at an election are presumed to acquiesce in the expressed will of those who did. Hence a law requiring that an officer shall be chosen or a question decided by a specified majority of the votes of a county or other civil division is generally construed to mean that the election shall be decided by the required majority of the votes actually cast."

9 Ruling Case Law, p. 1115, states the rule as follows:

"Ordinarily, therefore, voters who do not choose to participate in an election are not to be taken into consideration in declaring the result. If the law requires a question to be decided or an officer to be elected by the votes of a majority of the voters of the county, this does not require that a majority of all the persons in the county entitled to vote shall actually vote affirmatively, but only that the result shall be decided by a majority of the votes cast. And so a constitutional provision, requiring the assent of two-thirds of the qualified voters of the county, at an election lawfully held for that purpose, to a proposed issue of municipal bonds, means the votes of two-thirds of the qualified voters present and voting at such election in its favor, as determined by the official return of the result."

It will be noted that in section 7 of Act 85 of 1921 the words used are "a majority in number of the landowners in said district." The word "all" is omitted from the wording.

In the case of Citizens and Taxpayers of De Soto Parish v. Williams et al., 49 La. Ann. 422, 21 So. 647, 37 L. R. A. 761, this court said:

"But pretermitting all reference to article 209, and confining the discussion, arguendo, to the provisions of article 242, let us consider the phrase, 'by a vote of the majority of the property taxpayers in numbers and in value,' and ascertain its true meaning. It is quite significant, indeed, that the phrase is 'by a vote of the majority of the property taxpayers,' etc., instead of 'by a vote of the majority of all the property taxpayers,' etc. Between such phrases as these two, a difference has been taken by nearly all of the courts whose opinions we have examined on the subject, and with the proximate result that, in cases where the word 'all' is omitted, the decisions have been that a majority of those actually voting carries the election in favor of the tax, those not voting being presumed to have acquiesced in the result, while in those cases in which the word 'all' occurs, an affirmative vote of all of the property taxpayers is requisite for that purpose. The following decisions of some of the courts of other states will serve to illustrate the foregoing propositions. They are founded upon the precepts of text-writers of the first ability, the trend of which may be summarized thus: That the rule to guide those to whom the question is submitted is, to take the majority of votes cast as a test, those who remain away from the polls being presumed to assent to what is done by a majority of those who vote. Their silence, when they had an opportunity to speak and change the result, is taken for consent to the result; that this is the settled doctrine in this country in respect to the election of officers at a general election, and also at elections for the purpose of deciding any special proposition. McCrary, Contest. Elec. p. 114."

The rules quoted, supra, have uniformly been adhered to by this court. In the case of State ex rel. John E. Fleury and Weaver R. Toledano v. J. J. Conway, No. 11333 of the docket of the Orleans Court of Appeal, recently decided, the court was called upon to interpret section 7 of Act 85 of 1921, and it held that:

"The words 'a majority in number of land owners in the said district,' as used in section 7 of Act 85 of 1921, means a majority of those actually signing petitions."

For the reasons stated the writ of certiorari is recalled and vacated, and relator's application is dismissed, at his cost.

O'NIELL, C. J., dissents.