**GUILLORY v. JONES, Governor, et al.**

No. 36093.

March 3, 1941.

Eugene Stanley, Atty. Gen., A. M. Suthon, Sp. Asst. Atty. Gen., and A. V. Pavy, Seth Lewis, C. F. Boagni, Jr., and Lawrence B. Sandoz, all of Opelousas, for applicant.

Wallace & Martin, of Baton Rouge, for respondents.

O'NIELL, Chief Justice.

Under the provisions of Section 31 of Article VII of the Constitution of 1921, up to November 1936, the State was divided into twenty-six judicial districts. The thirteenth district was composed of the parishes of St. Landry and Evangeline, and the fifteenth district was composed of the parishes of Acadia, Lafayette and Vermilion. By Act No. 3 of the Fourth Extra Session of the Legislature of 1935, the parish of St. Landry was transferred to the fifteenth district. And by a constitutional amendment adopted at the November election in 1936, according to a joint resolution known as Act No. 62 of the regular session of the Legislature of that year, Section 31 of Article VII of the Constitution was amended so as to increase the number of judicial dis-

tricts to twenty-seven, by taking the parish of St. Landry out of the fifteenth district and making that parish the twenty-seventh district. It was provided in this amendment that the Governor should appoint a district judge and a district attorney for the twenty-seventh judicial district to serve until the expiration of the terms of office of the district judges elected throughout the state in the November election of that year. Their terms will expire on December 31, 1942. On December 3, 1936, the Governor appointed Isom J. Guillory judge of the district court and at the same time appointed a district attorney for the twenty-seventh judicial district for the term which would expire on December 31, 1942. Judge Guillory and the newly appointed district attorney each promptly took his oath of office and entered upon his official duties. Judge Guillory has remained in office to this day, and is the plaintiff in this suit.

The district judges and district attorneys throughout the state are elected at the November election every six years, the six-year terms having commenced in 1924. It is so provided in the Constitution, in Article VII, in Section 33 as to district judges and in Section 58 as to district attorneys. The authority of the Governor to fill vacancies occurring in the office of district judge or district attorney, by appointment for the unexpired portion of the term, is limited by Section 69 of Article VII of the Constitution to cases where the unexpired portion of the term is less than a year. If it is a year or more the Governor must call a special election to fill the vacancy.

At the time when Judge Guillory was appointed, and until the Constitution was amended at the November election in 1940, all judges of the state courts, whether elected or appointed, were protected in their tenure of office, against any act of the Legislature—other than a constitutional amendment—by Section 40 of Article VII of the Constitution, thus: "No judge of any court of the State, except as otherwise provided in this Constitution, shall be affected in his term of office, salary, or jurisdiction as to amount, during the term or period for which he was elected or appointed; and any legislation so affecting any judge or court shall take effect only at the end of the term of office of the judge or judges, incumbents of the court, or courts, to which such legislation may apply at the time of its enactment."

At the November election in 1940 this section—Section 40 of Article VII—of the Constitution was amended according to a joint resolution known as Act No. 386 of the regular session of the Legislature of that year, so as to make this section applicable only to elected judges and to judges appointed to fill a vacancy where the unexpired portion of the term is less than a year,—and so as to read as follows: "No elected judge of any court of the State, except as otherwise provided in this Constitution, shall be affected in his term of office, salary, or jurisdiction as to amount, during the term or period for which he was elected; and any legislation

so affecting any such judge or court shall take effect only at the end of the term of office of such judge or judges, incumbents of the court, or courts, to which such legislation may apply at the time of its enactment; provided however that nothing in this amendment shall affect the present provisions of this Constitution with respect to judges appointed to fill an unexpired term of less than one year under the provisions of this Constitution. The term of office, salary, or jurisdiction as to amount, during the term or period for which such judges were appointed shall in no way be changed by this amendment."

The purpose and effect of this amendment of Section 40 of Article VII of the Constitution was to clear the way for an amendment of Section 31, which amendment was adopted at the same time, and which otherwise would be not consistent with Section 40 so far as it protected Judge Guillory in his term of office. We refer now to the amendment of Section 31, which amendment was adopted at the November election in 1940, pursuant to the joint resolution known as Act No. 387 of the regular session of the Legislature of that year, and which had the effect of removing from office Judge Guillory and the district attorney who had been appointed for the twenty-seventh judicial district, thus: "The offices of Judge and District Attorney in the Twenty-Seventh District are declared vacant and within thirty days after the adoption of this amendment the Governor shall call an election in said district for the purpose of electing a Judge and District Attorney for said Twenty-Seventh

District as in the case of vacancies in such offices, and said offices shall be filled thereafter as provided by existing law. The present occupants of said offices shall serve until those elected at said election have qualified."

The date of the election at which these constitutional amendments were adopted was November 5, 1940. On November 16 the Governor signed and on November 20 published his proclamation, declaring that the amendments were adopted, and giving the number of votes cast for and against each amendment. And, on November 16, the Governor issued his proclamation calling a special election to be held in the twenty-seventh judicial district on December 31, 1940, to fill the vacancy in the office of district judge and in the office of district attorney for that district, according to the provisions of Act No. 387 of 1940, as ratified at the November election.

Kenneth Boagni was the only candidate for the office of district judge and Seth Lewis was the only candidate for the office of district attorney in the election that was to be held on December 31, 1940. They were the nominees of the Democratic party. On the 26th day of December, 1940, after the time allowed by law for the qualifying of independent candidates had expired, the Lieutenant Governor, acting Governor in the absence of the Governor from the State, issued a proclamation declaring the fact that Boagni and Lewis were the only qualified candidates, and declaring them to be therefore the choice of the people and the duly elected District Judge and District Attorney, respectively, in and for the

Twenty-seventh Judicial District. The authority of the Governor. thus to dispense with an election,—other than a general state election or congressional election,— and to proclaim the candidate elected,— when only one candidate has announced and qualified for a particular office,—and when the time allowed by law for the announcing and qualifying of candidates has elapsed,—is given in Section 15 of Article VIII of the Constitution, as amended in November, 1934, according to Act No. 80 of the regular session of the Legislature of that year.

No one contested the title of Seth Lewis to the office of district attorney. But, before the time came for the Governor to issue a commission to Kenneth Boagni as district judge, Judge Guillory filed this injunction suit against the Governor and the Secretary of State and Boagni, and asked for a temporary restraining order and a rule to show cause why a preliminary injunction should not be granted to prevent the Governor from issuing a commission to Boagni, and to prevent the Secretary of State from countersigning or delivering the commission, and to prevent Boagni from taking the oath of office or interfering with Judge Guillory's performing the duties of the office, until such time as Judge Guillory's title to the office could be adjudicated in an appropriate proceeding to be brought by Boagni. Judge Guillory pleaded that the constitutional amendment by which his office was declared vacant was itself unconstitutional, because it deprived him of a vested right to the honors and emoluments of the office until the end of the year 1942,

and thus violated the State's obligation of the contract which had resulted from his being appointed to the office and his acceptance thereof, and therefore violated the contract clause in Section 15 of Article IV of the Constitution of Louisiana and in Section 10 of Article I of the Constitution of the United States; and that the attempt to take away from him the honors and emoluments of his office before the expiration of the term for which he was appointed was an attempt to deprive him of his property without due process of law, and to deny him the equal protection of the law, all in violation of the Fourteenth Amendment of the Constitution of the United States and Section 2 of Article I of the Constitution of Louisiana. In this connection Judge Guillory pleaded that the constitutional amendment which declared his office vacant was not lawfully a part of the Constitution because the Act No. 387, proposing the amendment, proposed two or more separate and distinct changes in Section 31 of Article VII of the Constitution, and therefore violated the requirement in Section 1 of Article XXI that when two or more amendments shall be submitted to the electors at the same election they shall be so submitted as to enable the electors to vote on each amendment separately. In the alternative, Judge Guillory pleaded that, if this constitutional amendment should be held valid, the Governor's call for an election to fill the vacancy was premature, because according to Section 1 of Article XXI of the Constitution, the amendment declaring the vacancy did not become effective until twenty days after the Governor

issued his proclamation that the amendment was adopted. Again in the alternative, Judge Guillory pleaded that the Governor had no authority to dispense with the election which he had called, and to declare the unopposed candidates elected, because the special provision in the amendment which required the Governor to call an election should prevail over the general provision in Section 15 of Article VIII of the Constitution, as amended on November 6, 1934, authorizing the Governor to dispense with an election when, in the circumstances stated, there is no necessity for holding an election. Hence Judge Guillory, in this alternative plea, contends that, if his removal from office was not unconstitutional or invalid, the Governor should be required yet to call an election for the purpose of filling the vacancy. Judge Guillory therefore prayed that the preliminary injunction which he asked for should be perpetuated until such time as his title to the office of district judge could be adjudicated in an appropriate suit to be instituted against him by Kenneth Boagni, claiming title to the office.

The district judge to whom this suit was allotted refused to grant a temporary restraining order against the Governor or against the Secretary of State, but granted a restraining order against Boagni, and at the same time issued a rule on the three defendants to show cause why the preliminary injunction should not be granted as prayed for.

In response to the rule to show cause why the injunction should not be granted Boagni filed an exception to the jurisdiction of

the court ratione personae, and, in the alternative, an exception of prematurity; and the three defendants filed exceptions to the jurisdiction ratione materiae, and exceptions of misjoinder of parties defendant, and exceptions of no cause or right of action. At the same time the defendants, answering the rule to show cause, admitted the facts alleged by the plaintiff and recited in this opinion, but denied that the plaintiff was entitled to an injunction, or entitled to remain in office. The judge, after hearing the parties, rendered a judgment overruling all of the defendants' preliminary pleas and exceptions, and granting an injunction against Boagni, restraining him from taking possession of the office of judge under any commission which the Governor might issue and restraining Boagni from interfering with Judge Guillory's performing the duties of the office, all until such time as Judge Guillory's right or title to the office might be adjudged in an intrusion-into-office suit which Boagni might bring against Judge Guillory under the provisions of Section 2593 of the Revised Statutes, as amended by Act No. 102 of 1928. But the judge refused to grant an injunction to restrain the Governor from issuing a commission to Boagni as district judge, and refused to grant an injunction to restrain the Secretary of State from countersigning the commission or delivering it to Boagni, and refused to grant an injunction to restrain Boagni from taking the oath of office under the commission that might be issued by the Governor. The Governor therefore issued the commission to Boagni and the Secretary of State coun-

tersigned it and delivered it to him, and he promptly qualified by taking the oath of office. He has obtained from this court a writ of certiorari and an alternative writ of prohibition, to determine whether the facts, which we have recited and which are not disputed, warranted the judge in enjoining him from entering upon the duties of his office.

All of the preliminary pleas and exceptions filed by the defendants, except perhaps Boagni's plea to the jurisdiction ratione personae, passed out of the case when the judge dismissed the rule for an injunction against the Governor, and the Secretary of State and Boagni received his commission. In passing upon the real issues in the rule to show cause it is not necessary to consider the exception to the jurisdiction ratione personae; we assume for the sake of argument that the court had jurisdiction over the person of the defendants.

The judge, in deciding that the plaintiff was entitled to an injunction, virtually decided the case on its merits and disposed of it finally; for he made the injunction a permanent injunction, to the full extent to which the plaintiff asked for a permanent injunction. By the judgment rendered the defendant is enjoined from entering upon the duties of the office in contest until he establishes, by means of an intrusion-into-office suit to be instituted by him, the validity of the commission which the Governor has issued to him. That is all that the plaintiff asked for.

In the written opinion which the judge rendered in this case he declared that

he would "carefully abstain from any expression of opinion upon the disputed title to the office in question." And the judge gave his reason for deciding that the plaintiff was entitled to an injunction as prayed for, thus: "Attorneys for plaintiff in their petition and brief have presented several very grave constitutional questions and issues to this court for determination". If the judge had decided the so-called "very grave constitutional questions and issues" which were presented by the plaintiff to the court "for determination", the judge would have found that the constitutional amendment which put an end to the plaintiff's tenure of office and authorized the election of his successor was not unconstitutional or invalid. It seems therefore that the judge overlooked the fundamental rule that a statute or constitutional amendment is presumed to be constitutional and valid unless and until it is judicially declared unconstitutional or invalid. The plaintiff's main contention in that respect is that the constitutional amendment adopted pursuant to Act No. 387 of 1940 divested him of a vested right and impaired the State's obligation under the contract of employment which resulted from his being appointed to the office and his acceptance of the appointment. The answer to that contention, of course, is that the election or appointment of a public officer and his acceptance of the office does not create a "contract" between the State and the officer, in the meaning of the contract clause in the Constitution. Butler v. Commonwealth of Pennsylvania, 10 How. 402, 51 U.S. 402, 13 L.Ed. 472; Blake v. United States, 103 U.S. 227, 26 L.

Ed. 462; Crenshaw v. United States, 134 U.S. 99, 10 S.Ct. 431, 33 L.Ed. 825; Taylor v. Beckham, 178 U.S. 548, 20 S.Ct. 1009, 44 L.Ed. 1187; Phelps v. Board of Education, 300 U.S. 319, 57 S.Ct. 483, 81 L.Ed. 674; Dodge v. Board of Education, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57; Higginbotham v. Baton Rouge, 306 U.S. 535, 59 S.Ct. 705, 83 L.Ed. 968; Id., 190 La. 821, 183 So. 168. In several of these cases, particularly in the Higginbotham case, it was said that the Legislature might abolish or shorten the term of any state office to the prejudice of the incumbent, provided, of course, that if the term of office was fixed in the state Constitution it required a constitutional amendment to shorten the term. In the Higginbotham case all of the other cases which we have cited were cited in support of this pronouncement: "The legislative power of a state over all offices within its reach being absolute at all times, except so far as restrained by the state Constitution, it may at pleasure create or abolish them, modify their duties, or shorten or lengthen the term of service."

The contention of the plaintiff that the constitutional amendment by which his office was declared vacant and a successor was required to be elected was violative of Section 1 of Article XXI of the Constitution, in that two or more changes in Section 31 were made in the one amendment, is not well founded. It is true that two or more distinct changes were made in the one amendment. The number of judicial districts was increased to twenty-eight by taking the parishes of Caldwell and La Salle out of the eighth district and making these parishes the twenty-eighth district; provision was made for the appointment of a district attorney for the twenty-eighth district, and the judge residing in that district was transferred from the old eighth district to the new district. The form in which this constitutional amendment was made was the same form in which all constitutional amendments are made; that is, the whole section was reproduced as amended, after the declaration: "so that said section 31 shall read as follows:" The requirement in Section 1 of Article XXI of the Constitution, that when two or more constitutional amendments are submitted at the same election they shall be so submitted as to enable the electors to vote on each amendment separately, means that each amendment, or concurrent resolution, shall be submitted as a separate amendment, so that the electors may vote for or against each amendment separately. It does not mean that each and every change to be made in a section or an article of the Constitution shall be the subject of a separate and independent concurrent resolution. Such a method of amending a section of the Constitution by making two or more changes at the same election would be impossible; because, if the section to be amended should be reproduced with only one change being made in one amendment, and be reproduced again with another change being made in another amendment, the two or more amendments of the same section, adopted at the same election, would contradict each other. For that reason—if for no other reason—the requirement in Section 16 of Article III of the Constitution, that an act of the Legislature shall

not embrace more than one object, is not applicable to joint resolutions proposing constitutional amendments.

■ The alternative contention of the plaintiff, that the Governor's call for an election to elect a successor to the plaintiff was premature, is not well founded. It is true that the Governor issued his call on the same day on which he issued his proclamation announcing the adoption of the constitutional amendments; but the important fact is that the date which he fixed for the holding of the election was subsequent to the date on which the constitutional amendments went into effect. According to Section 1 of Article XXI the amendments went into effect and became a part of the Constitution "twenty days after issuance of the Governor's proclamation." He issued his proclamation on the 16th and published it on the 20th of November, and on the 16th of November he also called the election to be held on the 31st of December. All that was required in that respect, in the constitutional amendment creating the vacancy, was that the Governor should call the election "within thirty days after the adoption of this amendment".

■ The second alternative contention of the plaintiff, that the Governor had no authority to dispense with an election and declare the unopposed candidate elected when the time allowed for the announcing and qualifying of candidates had expired, is not well founded. That authority is given to the Governor, in the circumstances stated, by Section 15 of Article VIII, as amended at the election held on November 6, 1934, in accordance with the concurrent

resolution known as Act No. 80 of the regular session of the Legislature of that year. The only restriction put upon the authority of the Governor in such cases is that it shall not prevail in the case of a general state election or a congressional election. The declaration in the constitutional amendment adopted on November 5, 1940, creating the vacancy in the office which is now in contest, that "the Governor shall call an election in said district for the purpose of electing a Judge and District Attorney", was not inconsistent with the authority of the Governor, under Section 15 of Article VIII of the Constitution, to dispense with the election when the time allowed by law for the qualifying of candidates had expired and only one candidate for each office had qualified.

■ The judge cited, as his authority for refusing to consider the question of title to the office,—or the so-called grave constitutional questions and issues presented by the plaintiff for determination,—the case of Guillotte v. Poincy, 41 La.Ann. 333, 6 So. 507, 508, 5 L.R.A. 403. That decision is not now—if in fact it ever was—authority for the proposition that a public official whose term has expired, and whose successor has been duly elected or appointed and qualified, has the absolute right, by merely holding possession of the office and alleging that he disputes his successor's title to the office, to enjoin him from performing the duties of the office without first bringing an intrusion-into-office suit, and establishing the validity of his election or appointment. The case of Guillotte v. Poincy was decided in 1889, at a time when,

according to Article 304 of the Code of Practice, writs of injunction were granted ex parte, without allowing the defendant a hearing and on the mere ex parte affidavit of the plaintiff. But, by Act No. 29 of 1924, being an act to regulate the procedure and practice in the granting of injunctions, it is provided that no court shall grant a writ of injunction without first giving notice to the opposite party or parties to be affected thereby, and without giving him or them an opportunity to be heard. It would be unreasonable if the law which requires a judge to order the defendant in a case like this to show cause why the injunction should not be granted should deny him the right to show that the plaintiff is not entitled to remain in possession of the office. The decision in Guillotte v. Poincy is authority for the proposition merely that a suit for an injunction is the proper method of procedure for a de facto officer who is threatened with forceable eviction by another person claiming title to the office; but the decision is not authority for the proposition that the defendant in such a suit cannot inquire into the right of the plaintiff to remain in possession of the office. There are some expressions in the opinion which are subject to misinterpretation in that respect by one who is without knowledge of all of the facts of the case. But in a concluding paragraph in the opinion it is made very plain that the judge in such a case should not grant an injunction unless the plaintiff establishes his right to remain in possession of the office. We refer to this paragraph: "Abuse of this remedy [by injunction] by officers de facto will be guarded against by the exercise of judicial discretion, which would refuse injunction unless serious showing of apparent right were made, as is certainly done in this case."

We have examined the original record of the suit of Guillotte v. Poincy, in the archives of this court, for a better understanding of the case. Guillotte was a duly appointed and commissioned and acting member of the Board of Flour Inspectors for the City and Port of New Orleans before and at the time when the Constitution of 1879 came into effect. It was provided in the Constitution of 1879 that the terms of office of all state officials were thereby terminated, but that every incumbent should continue to discharge the duties of his office until his successor would be inducted into office. Guillotte's term of office thus expired during a recess of the Senate, but the Governor did not avail himself of his right to make a recess appointment before the Legislature met. After the Legislature had held its session and adjourned, the Governor appointed Poincy to succeed Guillotte. Judge Albert Voorhies, who tried Guillotte's injunction suit, considered and decided the question of title to the office, and held, under authority of State ex rel. Attorney General v. Rareshide, 32 La.Ann. 934, that the Governor, by failing to make an appointment during the recess in which the vacancy occurred, or while the Senate was in Session, forfeited his right to make an appointment during the subsequent recess, or without the advice and consent of the Senate. Hence the judge held that the appointment of Poincy during the subse-

quent recess of the Senate was not a valid appointment and would not become valid unless and until confirmed at the next session of the Senate. For that reason the judge perpetuated the injunction. On appeal to this court the judgment was amended by reserving to Poincy the right to establish his title to the office thereafter.

In the case of Goldman v. Gillespie, 43 La.Ann. 83, 8 So. 880, 881, the court again said that, in an injunction suit brought by a de facto officer against an adverse claimant threatening to oust him from the office, the question of title to the office should not be determined; and as authority for that the court cited Guillotte v. Poincy; but, in the final paragraph of the opinion in Goldman v. Gillespie, the court again made it plain that the plaintiff in a case like this should not be granted an injunction unless he first establishes his right to remain in possession of the office. The court said: "It may be well to add that in applications for injunctions in cases of this description judges should require the strongest essential showing, for it is a grave thing in itself for an incumbent to resist the appointment of a successor to him by an executive. Otherwise, upon mere routine allegations, every commission issued by the governor, even in proper cases, could easily be for awhile nullified."

Again in Wheeler v. Board of Fire Commissioners, 46 La.Ann. 731, 15 So. 179, 180, in 1894, where an officer in possession of his office enjoined an adverse claimant from taking possession of the office, the court considered and decided the question of title to the office, and, in maintaining the plaintiff's right to the injunction, said: "We recognize that injunctions of this character should be granted only after the most careful examination by the judge to whom application for the same is made, inasmuch as there is danger of the judiciary being made to temporarily trench unintentionally upon powers legally committed to other departments of the government, or to special persons or tribunals, and inasmuch as public as well as private interests are almost necessarily more or less concerned in such proceedings."

In the case of State ex rel. Kuhlman v. Rost, Judge, 47 La.Ann. 53, 16 So. 776, 779, in 1895, the Governor removed from office, under authority of Act No. 125 of the Extra Session of 1877, three members of the Police Jury for the Parish of St. Charles and appointed their successors. The statute declared that the Governor was authorized and empowered to remove for cause or incompetency any officer or appointee whom he had authority to appoint. L. A. Cambre was one of the three police jurors whom the Governor removed from office, and B.. J. Kuhlman was appointed as his successor. Cambre sued for and obtained an injunction against Kuhlman, forbidding him to interfere with Cambre's performing the duties or receiving the emoluments of the office. Kuhlman applied for and obtained from this court writs of certiorari and prohibition to set aside the injunction. This court, after hearing the case, made the writ of prohibition peremptory and set aside the injunction. In deciding the case the court referred to the fact that Kuhlman had attended a meeting of the police jury

and to that extent had taken possession of the office; but that was not the reason given for setting aside the injunction. The reason given was that Act No. 125 of the Extra Session of 1877 gave the Governor authority to remove Kuhlman and to appoint Cambre in his place. Kuhlman had pleaded in his petition for an injunction that the statute was superseded and repealed by the Constitution of 1879. On that subject the court said: "We take judicial notice of Act No. 125, Ex.Sess. 1877. That act has not been repealed. Whether or not it has become inoperative by reason of the adoption of the constitution is not a question to be lightly raised, and on general indirect allegations, nor to be raised by the court itself. This statute has been constantly acted upon by the executive of the state since 1880. The official action of the head of the executive department is presumed to be within the scope of his authority. This presumption is sufficiently strong, under the statute cited, to entitle a person, who has qualified as a statute officer, in an office, the appointment to which is vested in the governor, prima facie to possession of the office."

In that injunction suit the court considered the question of title to the office, and, finding that the defendant was entitled to the office, held that the plaintiff was not entitled to an injunction. In deciding the question the court said: "That there may be cases of such a character as to force the judiciary, in the discharge of its own duty, to review, to declare null and void, and to set aside acts of the legislature or executive departments, is beyond question; but, as

we have said, the occasion which would require it to do so at the instance of an individual citizen by way of injunction, which would at once ex parte restrain and change (temporarily, at least) the course which public affairs would naturally have followed but for the injunction, must be clear and patent."

The case entitled State ex rel. Keller v. Rost, Judge, 47 La.Ann. 61, 16 So. 663, was a sequel of the case of State ex rel. Kuhlman v. Rost, Judge. The police jury of the parish of St. Charles, having authority to select one of the three members of the Board of Supervisors of Election for the parish, according to Section 13 of Act No. 181 of 1894, appointed L. A. Cambre as a member of the board at the first meeting of the newly organized police jury; but, afterwards, at the same meeting, the board rescinded the appointment of Cambre and appointed L. A. Keller. Before either Cambre or Keller had performed any of the duties or functions of the office Cambre sued for and obtained an injunction restraining Keller from exercising any of the duties or functions of the office until the legality of his appointment should be determined in due course of law. Judge Rost granted the injunction by an ex parte order. Keller applied for and obtained from this court writs of certiorari and prohibition to set aside the injunction. After hearing the parties the court made the writ of prohibition peremptory, and set aside the injunction. In that case, as in the case of State ex rel. Kuhlman v. Rost, Judge, the court considered the conflicting claims of the

plaintiff and the defendant, and decided that the defendant was entitled to the office.

The decision rendered in State ex rel. Kuhlman v. Rost, Judge, 47 La.Ann. 53, 16 So. 776, in 1895, and affirmed in State ex rel. Keller v. Rost, Judge, 47 La.Ann. 61, 16 So. 663, cannot be reconciled with the broad statement made in Guillotte v. Poincy, 41 La.Ann. 333, 6 So. 507, 5 L.R.A. 403, in 1889, that the court cannot inquire into the question of title to a public office in a suit brought by a de facto officer for an injunction to prevent his successor from entering upon the duties of the office.

In State ex rel. Saizan v. Judge, 48 La. Ann. 1501, 21 So. 94, on the petition of the district attorney, the judge enjoined four newly appointed police jurors from entering upon the duties of their office, but on their application to this court for writs of certiorari and prohibition the court granted the writs and set aside the injunction. The court affirmed the Kuhlman case and the Keller case, thus:

"It is the bounden duty of the judiciary to give some prima facie force and effect to the acts of the executive. His acts are not to be presumed illegal and utterly wrong.

"The court affirms expressly State [ex rel. Kuhlman] v. Judge, 47 La.Ann. 53, 16 So. 776, and State [ex rel. Keller] v. Judge, 47 La.Ann. 61, 16 So. 663."

And in the course of the opinion in that case it was said: "If a district court, upon a mere declaration by a district attorney that the governor has illegally appointed a police juror, before that officer has taken his seat, can successfully enjoin him from exercising his functions until he shall have brought suit to establish his right, and shall have established his right, the district court could, with equal propriety, upon a mere declaration of a district attorney that the governor had illegally appointed a district judge or any other officer, enjoin him from qualifying, and thus bring about absolute confusion in the administration of public affairs."

The decision rendered in Guillotte v. Poincy has been cited as if with approval in many cases, but in none of these cases did the decision go further than to hold that a suit for an injunction was the appropriate and proper procedure for a de facto officer to protect his possession of the office against an adverse claimant until the question of title to the office could be determined. In none of these cases was it decided that the title to the office could not be determined in the injunction suit. In none of these cases was it held that the court was bound to maintain the de facto officer in possession of the office until the de jure officer should bring an intrusion-into-office suit and thereby establish his title to the office,—even though the facts in the injunction suit might show that the plaintiff has no title to the office. We refer to the following cases where Guillotte v. Poincy is cited: Peters v. Bell, 51 La.Ann. 1621, 1622, 26 So. 442; Sanders v. Emmer, 115 La. 590, 39 So. 631; Jackson v. Powell, 119 La. 882, 44 So. 689; Gleason v. Widsom, 120 La. 632, 45 So. 530; State ex rel. Bourg v. Turner, 152 La. 828, 94 So. 411; State ex rel. Ferry v. Buchler, 166 La. 743, 117 So. 814; State ex rel. Porterie, At-

torney General, v. Smith, 182 La. 662, 162 So. 413.

The true doctrine of all of these decisions, taken together, is that a de jure officer cannot oust a de facto officer by means of an injunction, but must resort to the intrusion-into-office suit; whereas the de facto officer may proceed by injunction against an outsider claiming the office, but is not entitled to the injunction unless he proves his title to the office.

It is said in High on Injunctions, 4th Ed. Vol. 2, p. 1325, Ch. XXII, Section 1312, that a court of equity will not permit itself to be made the forum for determining disputed questions of title to public offices, or for the trial of contested elections, but in all such cases will leave the claimant of the office to pursue the statutory remedy, if there be such remedy, or the common-law remedy by proceedings in the nature of a quo warranto. But the author has reference to the method of procedure in those states in which the courts do not administer law and equity in the same proceeding. In Louisiana the judges are vested with the broad power of administering both law and equity in the same proceeding. Hence no good reason could be given for forbidding a judge of a Louisiana court to decide whether the plaintiff or the defendant is entitled to the office, in a suit brought by a de facto officer for an injunction to prevent one who claims to be his successor from taking possession of the office. There is no reason why a contest like this in a Louisiana court should not be settled finally in the suit for an injunction, instead of requiring two suits to settle the controversy.

Decree.

The judgment complained of is reversed, and the writ of injunction by which Kenneth Boagni was enjoined from taking possession and performing the duties of his office as judge of the district court in and for the twenty-seventh judicial district is now annulled and set aside, at the cost of the plaintiff, Isom J. Guillory.