**Allan Roy KINGSTON et al.,**
**Plaintiffs,**

**v.**

**Walter H. McLAUGHLIN et al.,**
**Defendants.**

**Civ. A. No. 72–3551.**

United States District Court,
D. Massachusetts.

Dec. 19. 1972.

---

Morris M. Goldings, Thomas B. Brennan, Edward M. Ginsburg, Boston, Mass., for plaintiffs.

James P. Kiernan, Paul A. Good, Asst. Attys. Gen., Boston, Mass., for defendants.

Andrew F. Lane, Ely, Bartlett, Brown & Proctor, Boston, Mass., for amicus curiae, Lawyers Committee for Civil Rights under law, Boston Urban Areas Project.

Harold Brown, Boston; Mass., for amicus curiae, Ad Hoc Committee.

Edward T. Dangel, III, Boston, Mass., for amicus curiae, Mass. Trial Lawyers Assoc.

Jonathan A. Weiss, New York City, for amicus curiae, Legal Services for the Elderly Poor.

Herbert P. Gleason, Corp. Counsel, by Mack K. Greenberg, Asst. Corp. Counsel, Boston, Mass., for Edmund W. Holmes.

Philip J. MacCarthy, Worcester, Mass., for Edward P. Bird, Treasurer of Worcester County.

Before COFFIN, Chief Circuit Judge, and PETTINE and FREEDMAN, District Judges.

PER CURIAM.

On November 7, 1972, the voters of Massachusetts approved an amendment to the Commonwealth's constitution

which requires state judges attaining the age of seventy to retire. Eleven judges over seventy, who have been sitting prior to the adoption of the amendment, but who are now threatened with involuntary retirement, bring this action seeking to enjoin the enforcement of the constitutional amendment against them.

The judges argue that the amendment constitutes an unconstitutional impairment of the obligation of contract in violation of Article 1, Section 10, Clause 1 of the United States Constitution; that the amendment would deprive them of property without due process or just compensation, in violation of the Fourteenth Amendment; and that the Supremacy Clause would be violated if the amendment were to be applied to them.

Relief is sought against the Chief Justices of plaintiffs' respective courts, enjoining them from preventing plaintiffs from continuing to sit in their respective judicial offices; against the Commonwealth's Treasurer and Receiver General, enjoining him from reducing the judicial compensation of any of the plaintiffs by applying the Commonwealth's pension statutes to them; and against the Secretary of the Commonwealth, enjoining him from certifying to the Governor the votes cast on the constitutional amendment. Other defendants are Treasurers of three Massachusetts counties. Plaintiffs also seek a declaration that the constitutional amendment does not apply to judicial officers of the Commonwealth appointed prior to the effective date of the amendment.

A temporary restraining order was issued against certification of the votes on the amendment to the Governor. Shortly thereafter briefs were filed and this hearing was held on plaintiffs' request for a preliminary injunction.

The plaintiffs, each of them seventy years old or older, hold positions on the Massachusetts Superior Court, county Probate Courts, District Courts, and Municipal Courts. Four plaintiffs are Special Justices. All of the plaintiffs but two were appointed before 1956 and these two are Special Justices. Each was appointed pursuant to the Massachusetts Constitution, 2d part, Art. 1, c. 3, which, at the time of their appointments to the bench, read as follows, except for the clause in brackets:

"*Article 1.* The tenure, that all commissioned officers shall by law have in their offices, shall be expressed in their respective commissions. All judicial officers, duly appointed, commissioned and sworn, shall hold their offices during good behavior, excepting such concerning whom there is different provision made in this constitution; provided, nevertheless, the governor, with the consent of the council, may remove them upon the address of both houses of the legislature; and provided also that the governor, with the consent of the council, may after due notice and hearing retire them because of advanced age or mental or physical disability; [and provided further, that upon attaining seventy years of age said judges shall be retired.] Such retirement shall be subject to any provisions made by law as to pensions or allowances payable to such officers upon their voluntary retirement."

The Article of Amendment, which includes the bracketed clause, had previously been passed by two joint sessions of the legislature and was adopted by the Massachusetts voters on November 7, 1972. As interpreted by the Supreme Judicial Court of Massachusetts, the new amendment will take effect at the time of the final tabulation and determination of the vote in accordance with M.G. L.A. c. 54 § 115. Opinion of the Justices to His Excellency the Governor of the Commonwealth of Massachusetts, 1972 Mass.Adv.Sh. 1657, 287 N.E.2d 910. Both sides agree that the amendment was meant to apply both retrospectively and prospectively, i. e., to judges appointed in the past as well as to those to be appointed in the future. The plaintiffs contend that this amendment

deprives them of certain "entitlements" in violation of the United States Constitution.

Salaries of Massachusetts judges are set by statute. See M.G.L.A. c. 217 § 30; c. 212 § 27; c. 218 §§ 75–78. While salaries may differ according to the court involved, and while the Chief Justice of any court usually is paid a higher salary, there are no provisions for increasing salary with length of service on the bench. Moreover, the legislature is empowered to reduce salaries of judges while they hold office. Opinion of the Justices, 271 Mass. 575, 171 N.E. 237 (1930).

Pensions are established by M.G.L.A. c. 32 § 65. Under M.G.L.A. c. 32 § 65A, generally, a judge is entitled to receive a pension for life equal to three-fourths of the annual salary payable to the judge at the time of such resignation or retirement. An optional plan is available under M.G.L.A. c. 32 § 65C, which allows a judge to elect a pension at a lesser annual rate than that provided in § 65A with the provision that upon his death, leaving as a survivor a widow who was his spouse at the time of his retirement or resignation, two-thirds of such pension for life at a lesser annual rate shall be paid to such widow, the lesser rate to be determined actuarially. The effect of computing the pension actuarially is that each year beyond age 70 the judge delays his retirement, it reduces the amount of the pension and survivor's benefit available. Pensions for Special Justices are provided for in M.G.L.A. c. 32 § 65B, which requires that the justice serve ten years on the bench to be entitled to a pension. These pensions do not require any financial contribution by the judges.

Application of the Massachusetts constitutional amendment to plaintiffs is alleged to violate the contract clause, the Fourteenth Amendment due process clause, and the Supremacy Clause of the United States Constitution. By their Supremacy Clause claim we do not understand plaintiffs to do any more than reiterate their Fourteenth Amendment and contract clause claims. Since, as noted below, the claimed right is one alleged to be created by contract, we must first ascertain whether a protectable right exists, before we reach the question whether its deprivation involves a violation of due process.

Article 1, Section 10 of the United States Constitution provides that "No State shall pass any . . . Law impairing the Obligation of Contracts." Protection of the contract clause is not limited to common law contracts, see P. Kauper, "What is a 'Contract' Under the Contracts Clause of the Federal Constitution", 31 Mich.L.Rev. 187 (1931), and has been extended to rights created by and impaired by state constitutions. Coombes v. Getz, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866 (1932). Protection also extends to implied contracts to pay for past services rendered. Fisk v. Jefferson Police Jury, 116 U.S. 131, 6 S.Ct. 329, 29 L.Ed. 587 (1885). A state may not assert immunity to a suit for injunctive relief when it is a party to a contract covered by the contract clause. Davis v. Gray, 16 Wall. 203, 83 U.S. 203, 232, 21 L.Ed. 447 (1873); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

The application of these principles demands a close scrutiny of the particular interest or right which is alleged to be impaired. While the existence of a contract and its terms are initially and primarily questions of state law, neither side urges that we abstain. More importantly, we approach our analysis by accepting plaintiffs' assertions as to state law, except where inconsistent with their concessions. Accordingly, we begin by identifying what is not at issue.

In the first place, the contract asserted here is not one in which the Commonwealth has irrevocably promised continued office to the plaintiffs. They concede that there is no vested right to office. Plaintiffs recognize the continued validity of the doctrine articulated in Butler v. Pennsylvania, 10 How.

402, 51 U.S. 402, 417, 13 L.Ed. 472 (1850):

> "[T]he appointment to and the tenure of an office created for the public use, and the regulation of the salary affixed to such an office, do not fall within the [contract clause]; do not come within the import of the term 'contracts,' or, in other words, the vested, private personal rights thereby intended to be protected. They are functions appropriate to that class of powers and obligations by which governments are enabled, and are called upon, to foster and promote the general good; functions, therefore, which governments cannot be presumed to have surrendered, if indeed they can under any circumstances be justified in surrendering them."

This rule applies to the judicial offices as well, Commonwealth ex rel. Hepburn v. Mann, 5 Watts & Sargeant 403, 418 (Pa.1843), cited with approval in *Butler,* *supra,* 51 U.S. at 418, and has been followed in subsequent cases: Crenshaw v. United States, 134 U.S. 99, 10 S.Ct. 431, 33 L.Ed. 825 (1890); Taylor and Marshall v. Beckham (No. 1), 178 U.S. 548, 20 S.Ct. 890, 44 L.Ed. 1187 (1900); Phelps v. Board of Education, 300 U.S. 319, 57 S.Ct. 483, 81 L.Ed. 674 (1936); Dodge v. Board of Education, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57 (1937); Higginbotham v. Baton Rouge, 306 U.S. 535, 59 S.Ct. 705, 83 L.Ed. 968 (1938). *See also* Guillory v. Jones, 197 La. 165, 1 So.2d 65 (1941); M. Merrill, "Application of the Obligations of Contract Clause to State Promises", 80 Pa.L.Rev. 639 (1932).

Plaintiffs, while accepting *Butler* and making no claim to a property right to their public office, nevertheless would construe the doctrine to permit the people to abolish courts or offices "in an effort to remodel the organic law of the state", but not to the removal of judges who have reached a certain age. They cite in argument Loring v. Young, 239 Mass. 349, 132 N.E. 65 (1921), for the proposition that a mere rearrangement of constitutional provisions is not en-titled to greater respect than statutory law. We fail to see the relevance of that case which turned on the question of statutory authority given to a constitutional convention to revise, not rearrange, the Massachusetts constitution. In any event, not only does the amendment at issue here introduce significant change in the tenure of judicial office in the Commonwealth, but, in accordance with the cases previously noted, we do not think *Butler* can be narrowly read as confined to abolition of offices. Nor do plaintiffs bring themselves within the exception to *Butler* recognized in Indiana ex rel. Anderson v. Brand, 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685 (1938), where the Indiana Teachers' Tenure Law, couched in contract terms, requiring written contracts with teachers, and deemed to implement a policy of protecting teachers, was held to create vested property rights in a permanent teacher's contract.

■ In the second place, plaintiffs do not claim a vested right to their present salary. It is apparent that these plaintiffs have, by being forced to accept pensions rather than continue on the bench with salary, lost at least one quarter of the amount of their salaries each year. Yet this raises no constitutional claim since, even if they do have contracts with the Commonwealth, they commenced service with the knowledge that the legislature could freely reduce their future salaries. Opinion of the Justices, 271 Mass. 575, 579, 171 N.E. 237 (1930). There can be, therefore, no vested contract right in the perpetuation of a given salary.

Finally, there is no question of diminution of the amount of pension payments. Whether the plaintiffs' noncontributory pension be considered a vested interest, in the nature of deferred compensation, as plaintiffs assert, or simply a gratuity, as the Commonwealth argues, is not a question which faces us. If that question were present, its resolution would most properly be made in the first instance by the courts of the Commonwealth. In fact, however, except for

**30**

those plaintiffs who have not served long enough to qualify for a pension, and thus have no pension rights, the amount of pension or spousal benefit has not been diminished. Those justices with ten years of service who do not elect to provide for their spouses, will receive three-fourths of their current salary for life. Since salaries are not guaranteed to rise if service continues, these justices suffer no decrease in the amount of pension to be received each year. Moreover, for justices who elect to provide for their spouses, it it stipulated that earlier retirement maximizes the amount of pension received by each of them since it is determined actuarially. Thus as plaintiffs conceded at argument, the new amendment does not impair any of their financial arrangements with the Commonwealth. Rather, it merely takes away their option of when to retire.

It is this option to determine voluntarily when to retire, when to cease drawing full salary and to commence receiving the lesser pension payments, that is claimed as an inchoate right or "entitlement" protected by the alleged contract with the Commonwealth. Plaintiffs point out the considerable sacrifices involved in the total or substantial withdrawal from the practice of the law imposed on one who enters the judiciary and the importance of the hope or expectancy to hold active office and draw full salary well beyond the age of seventy. The option to defer the time of leaving the active judicary may well have loomed significantly as a consideration in one's decision to accept a judicial post. But, if there is no basic vested right to office, we cannot see how any inchoate right to choose when to retire from that office can be protected against constitutional amendment. Plaintiffs' sophisticated argument, when so viewed, is but an assertion that tenure in office, which concededly has not been directly guaranteed, can be indirectly guaranteed by recognition of the "inchoate right" to determine when to cease drawing full salary.

 We recognize that perhaps the cleaver of constitutional amendment cuts broadly. It may be that complete justice for those who have long served honorably requires the skills of the legislature. But we can find no basis for a judgment invalidating the Article of Amendment adopted by the people of Massachusetts. We therefore hold that plaintiffs' claim at root is a claim which they have properly disavowed—a claim to office; and that the option to elect when to cease drawing full salary is not within any contract between them and the Commonwealth.

Accordingly, it is the order, judgment and decree of this Court that plaintiffs' prayer for injunctive and declaratory relief be and the same is hereby denied.