HENRY SCHALL *et al.*

*v.*

JOHN BOWMAN *et al.*

1. CONSTITUTION OF 1870—*municipal subscriptions.*  The separate articles of the constitution of 1870 of this State having been submitted to a vote of the people separately from the main body of the constitution, and adopted, became a part of the organic law of the State from and after the second day of July, 1870, and a constituent part of the same *eo instanti.*

J. J. SCOTT and SHELDON dissenting.

APPEAL from the Circuit Court of St. Clair County; the Hon. JOSEPH GILLESPIE, Judge, presiding.

Mr. M. MILLARD and Mr. CHARLES C. WHITTELSEY, for the appellants.

Mr. L. H. HITE, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

There are three questions presented by agreement on this record for our consideration, and they are these:

1st. Did the section of the new constitution (submitted separately) in relation to municipal subscriptions to railroads or private corporations take effect before the third day of August, 1870, and thereby annul the right of the city of East St. Louis to vote the subscription?

2d. Is "The American Bottom Lime, Marble, and Coal Company" a railroad company within the meaning of the law authorizing municipal subscriptions to the capital stock of railroad companies?

3d. Is the act incorporating said company, or the act amending and reviving the same, of which exhibits C and D to the bill are copies, in conflict with that part of section 23, article 8, of the constitution of 1848, which is as follows, viz: "And no private or local law which may be passed by the general assembly shall embrace more than one subject, and that shall be expressed in the title."

We have confined our attention to the first question, as an affirmative answer to that settles the controversy.

We have examined the constitution with care, aided by the able arguments of counsel, and can come to no other conclusion than this: That the separate articles of the constitution of 1870, by the vote of the people taken on the second day of July of that year, became a part of the organic law of the State from and after that day, and a constituent part of the same *eo instanti.*

The schedule of the constitution of 1870, section 8, provides as follows: This constitution shall be submitted to the people of the State of Illinois, for adoption or rejection at an election to be held on the first Saturday in July, A. D. 1870, and there shall be separately submitted at the same time for adoption or rejection (among other sections) the following: The section relating to municipal subscriptions to railroads or private corporations. That section is in these words:

" No county, city, town, township, or other municipality, shall ever become subscriber to the capital stock of any railroad, or private corporation, or make donation to, or loan its credit in aid of such corporation ; *provided,* however, that the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions where the same have been authorized under existing laws, by a vote of the people of such municipalities prior to such adoption."

Section 10 of the schedule, provides a form of the ticket to be voted, containing the general and special propositions, one of which is, "For the section relating to municipal subscription to railroads or private corporations."

Section 11 provides, that " the returns of the whole vote cast, and of the votes for the adoption or rejection of this constitution, and for or against the articles and sections respectively submitted, shall be made by the several county clerks " to the secretary of State, etc.

Section 12 provides, " if it shall appear that a majority of the votes polled are 'for the new constitution,' then so much of this constitution as was not separately submitted to be voted on by articles and sections, shall be the supreme law of the State of Illinois, on and after Monday, the 8th day of August, 1870 ; but if it shall appear that a majority of the votes polled were 'against the new constitution,' then so much thereof as was not separately submitted to be voted on by articles and sections, shall be null and void."

And it further provides, if a majority of the votes polled, are for either of the sections separately submitted, relating respectively to the " Illinois Central Railroad," " Minority Representation," " Municipal Subscriptions to Railroads or Private Corporations," and " The Canal," then such of said sections as shall receive such majority, shall be a part of the constitution of this State.

The election was held on the second day of July, 1870 ; the returns were made within twenty days thereafter, in pursuance of section 11, and on the 26th of that month the official can-

vass was made, and on the 27th the governor issued his proclamation declaring the result.

The election in the city of East St. Louis, authorizing the subscription in question, took place on the 3d day of August, 1870.

Collating the provisions of the constitution bearing on this question, as we have done, it seems difficult to reach any other conclusion than this, that whatever might be the fate of the new constitution as a whole, the separate articles voted, in receiving a majority of the votes cast, became *ipso facto*, and *eo instanti* a part of the organic law of the State. To this conclusion the mind must be led in considering the language used in connection with the object to be attained, and this involves a consideration of the evils of the old system, to remedy which a weighty obligation rested upon the convention.

The provision in question was so framed that it could, appropriately and effectually, become a part of the organic law, without the disturbance of any of its elements, and was a declaration of the people on the 2d day of July, 1870, that from and after that day, no matter what may become of the new constitution, no county, city, town, township, or other municipality, shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to, or loan its credit in aid of such corporation.

The passion for subscriptions by the municipalities, to every conceivable project presenting itself in a corporate form, was so violent, and prevailed so extensively throughout our State as to demand a speedy, prompt, and efficient remedy.

Under the constitution of 1848, these subscriptions were authorized for corporate purposes, and the taxing power was legally exercised to meet their exigencies. To such an extent had it progressed prior to July 2, 1870, that counties, towns, and cities in this State had become involved to the extent of millions of dollars for which the property and labor of their people were forever pledged. Article 9, section 5, constitution of 1848.

We are unable to find any thing in the constitution itself, or in the schedule thereto, militating against the view we have taken, that this separate article of the constitution of 1870

went into full effect on the day of its adoption by a vote of the people; that is, on the 2d day of July, 1870. There is no provision of the constitution requiring a different construction.

Counsel for appellee asks, was there any pressing necessity that this section should go into effect thirty-six days before the constitution itself? We answer, the condition of these municipalities, to which we have adverted, and the increasing demand for railroads, many of those enterprises thrust upon the attention of the people so clamorously, admonished the convention they could not be too prompt in arresting the tide. A delay of a single week might have produced insolvents of these municipalities, greatly swelling the already enormous aggregate. Delay might be more extensive ruin.

The counsel further says, that taxation under our form of government is indirectly sanctioned by the people, as they, in a representative capacity, make the assessments and levy the taxes. But this is almost, in fact, a case of voluntary donation by the people of their own funds to an enterprise believed by them to be necessary to their municipal welfare. They ask to be permitted to dispose of their own property as to them seems fit; and courts will not, he trusts, at the instance of a factious few, representing little property and less enterprise, deny them this right unless it is clear that the law under which they act is unconstitutional.

This was the argument which prevailed under the constitution of 1848, yielding to which has caused our vast municipal debt.

Many of those who vote these subscriptions, it was well known to the convention, and to every body else, did not possess a dollar of their own, or own any property to be taxed, but having the voting power, they could so use it in furthering such enterprises, producing as they do many jobs and contracts by which they would profit as individuals with none of the burdens of a tax-payer.

It is no great effort of liberality, or exhibition of public spirit, for a penniless man to vote money out of the pockets of his neighbor. Such, having no property of

their own to be taxed, have been found willing and eager to
depredate, in the shape of taxation, upon the hard-earned
gains of others, especially if he himself is to be a partici-
pant in the spoils.

It was in the condemnation of such a system the con-
vention so promptly interfered.

The demurrer was improperly sustained. The decree of
the circuit court dismissing the bill is reversed and the
cause remanded for further proceedings consistent with this
opinion.

*Decree reversed.*

Justices Scott & Sheldon dissent.