OPINION OF THE JUSTICES TO THE GOVERNOR.

*Constitutional Law*, Amendment of the Constitution. *Elections.*
    *Retirement. Judge.*

A proposed legislative amendment to the Constitution, providing that
    "upon attaining seventy years of age" the judges of the Common-
    wealth "shall be retired," upon approval by the voters pursuant to
    art. 48, The Initiative, IV, § 5, of the Amendments to the Consti-
    tution, would take effect and become operative on the date of the
    final tabulation of the votes and determination of the result thereof
    by the Governor and Council pursuant to G. L. c. 54, § 115, as
    amended by St. 1952, c. 207; judges required to retire pursuant to
    the proposed amendment may sit and otherwise discharge their
    duties in the interval between the election day on which the voters
    approve the proposed amendment and the date of final tabulation
    and determination by the Governor and Council. [909–913]

On September 28, 1972, the Justices submitted the
following answers to questions propounded to them by
the Governor.

To His Excellency, the Governor of the Common-
wealth:

The undersigned Justices of the Supreme Judicial
Court respectfully submit their answers to the ques-
tions set forth in your request dated September 15,
1972, and submitted to the Justices on that date. The
request states that certain important questions have
arisen concerning the effect of the proposed article of
amendment which would annul art. 1 of c. 3 of Part II
of the Constitution, as amended by art. 58 of the Amend-
ments, and adopt in place thereof a new art. 1 differing
only by the addition of a provision requiring the retire-
ment of judges at age seventy. In addition to the fore-
going it states that this article of amendment (a legisla-
tive amendment) has been passed by two joint sessions
of the General Court and is to be submitted to the people
for approval on November 7, 1972, pursuant to the

forty-eighth article of amendment to the Constitution of the Commonwealth.

It also states that thirty-nine judges presently sitting in the various courts of the Commonwealth will be beyond seventy years of age as of November 7, 1972, and, should the proposed article of amendment become part of the Constitution by vote of the people, they will immediately be affected by its operation. A serious and unusual exigency is presented by such retirements and by the Governor's obligation to make a large number of nominations and appointments (pursuant to art. 9 of § 1 of c. 2 of Part II of the Constitution of the Commonwealth) to fill such vacancies as expeditiously as possible and thus prevent a disruption of the judicial system.

It states further that doubt has arisen concerning the date on which these judicial offices would actually become vacant.

The questions are as follows:

"1. If the proposed Article of Amendment to Article 1 of Chapter 3 of Part 2 of the Constitution, as amended by Article 58 of the Amendments thereto, providing for retirement of judges at the age of seventy, is approved by the people on November 7, 1972, will the vacancies resulting from the application of the proposed Article of Amendment to sitting judges occur on the date that the vote of the people is tabulated by the Governor and Council pursuant to G. L. c. 54, § 115?

"2. If the proposed Article of Amendment to Article 1 of Chapter 3 of Part 2 of the Constitution, as amended by Article 58 of the Amendments thereto, providing for retirement of judges at the age of seventy, is approved by the people on November 7, 1972, and tabulation of that vote by the Governor and Council pursuant to G. L. c. 54, § 115, occurs at a later date, may judges required to retire pursuant to the Amendment sit and otherwise discharge their

duties in the interval between election day and the date of official tabulation by the Governor and Council?"

As mentioned, the questions presented relate to the date upon which judicial vacancies would arise pursuant to a legislative article of amendment which would annul art. 1 of c. 3 of Part II of the Constitution, as amended by art. 58 of the Amendments, and adopt in place thereof a new art. 1 differing only by the addition of a provision requiring the retirement of judges at age seventy. The new art. 1 would read as follows: "The tenure, that all commissioned officers shall by law have in their offices, shall be expressed in their respective commissions. All judicial officers, duly appointed, commissioned and sworn, shall hold their offices during good behavior, excepting such concerning whom there is different provision made in this Constitution; provided, nevertheless, the governor, with the consent of the council, may after due notice and hearing retire them because of advanced age or mental or physical disability; and provided further, that upon attaining seventy years of age said judges shall be retired. Such retirement shall be subject to any provisions made by law as to pensions or allowances payable to such officers upon their voluntary retirement." The aforementioned legislative article of amendment has been passed by two joint sessions of the General Court pursuant to the forty-eighth article of Amendment to the Constitution of the Commonwealth, and is to be submitted to the people for approval on November 7, 1972. Art. 48, The Initiative, IV, § 5, of the Amendments to the Constitution of the Commonwealth.

The provision of our Constitution relative to submission to the people provides in part: "If in the next general court a legislative amendment shall again be agreed to in joint session by a majority of all the members elected . . . such fact shall be certified by the clerk of such joint session to the secretary of the commonwealth, who shall submit the amendment to the people at the next state election. Such amendment shall become part

of the constitution if approved . . . by a majority of the voters voting thereon."

We have been unable to find any case in this Commonwealth which has considered directly the issue when a constitutional amendment takes effect. However, this issue has been considered by other jurisdictions. As a general proposition of law a constitutional amendment takes effect upon the day of its ratification by the people. *State* v. *Kyle*, 166 Mo. 287. The question when such an amendment takes effect as part of the State Constitution was considered by the Supreme Court of Florida in an advisory opinion to the Governor. *In Re Advisory Opinion to the Governor*, 34 Fla. 500. Section 1 of art. 17 of the Florida Constitution prescribed the manner in which amendments to that instrument should be made and included the following sentence: "If a majority of the electors voting upon the amendments at such election shall adopt the amendments, the same shall become a part of the Constitution." The court concluded that this language left no doubt that the amendment became operative as part of the Constitution eo instanti upon its approval and adoption by the majority vote of the electors of the State. Similar provisions relative to proposed constitutional amendments were deemed to be effective from the time of their ratification by the popular vote in the cases of *Wade* v. *Walnut*, 105 U. S. 1, *Schall* v. *Bowman*, 62 Ill. 321, *Wade* v. *La Moille*, 112 Ill. 79, and *Seneca Mining Co.* v. *Osmun*, 82 Mich. 573.

The issue was decided differently in the case of *Sewell* v. *State*, 15 Tex. App. 56. Certain proposed amendments were voted upon and subsequently adopted by the people there at an election. However, since there was no provision made in the Constitution as to the mode and manner of tabulating the returns of the votes at the election, the court held that the rules prescribed in the general election law of the State were made applicable. The election laws of Texas provided that "on the fortieth day after the election, the day of election excluded, and not before, the Secretary of State, in the presence of

the Governor and Attorney General . . . shall open and count the returns of elections." See *Sewell* v. *State, supra,* at 60. The court held in view of the statute that the result of the election was determined on the day of the canvass of the returns. A similar decision was reached in the case of *Duluth* v. *Duluth St.-Ry.* 60 Minn. 178.

Similarly, in a New York case (*Real* v. *People,* 42 N. Y. 270) considering, inter alia, the question of the effective date of a constitutional amendment when a law exists requiring a canvass of votes the court there held: "The canvass of the votes cast . . . as required by law, and announcing the result and certifying the same . . . is as much a part of the election as the casting of the votes by the electors. The election is not deemed complete until the result is declared by the canvassers as required by law." *Id.* at 276.

Elections in this Commonwealth are governed by G. L. c. 54. Section 115 of c. 54, as amended by St. 1952, c. 207, provides: "The state secretary shall lay before the governor and council the copies of the records of votes cast, with their seals unbroken. Within ten days after such delivery, the governor, with at least five councillors, shall open and examine all such copies. They shall tabulate said votes and determine . . . what appears to be the result of the votes on any question or questions, and shall forthwith transmit to the state secretary an abstract of such tabulation and determination. . . ." There is no method of tabulation or determination provided in art. 48 of the Amendments to the Constitution relative to constitutional amendments. However, the election laws above mentioned do prescribe procedures to be followed to attain such tabulation. In addition, art. 48, though providing that it is "self-executing," provides further that "legislation not inconsistent with anything herein contained may be enacted to facilitate the operation of its provisions." General Provisions, VII. In accordance with c. 54, § 115, it is required that the Governor tabulate the votes on any question before the electorate.

We are of opinion that this tabulation is as much a part of the election process as is the casting of the votes and that the declaration of the result of an election is an indispensable adjunct to that process.    As mentioned *supra*, art. 48 provides that an amendment shall become part of the Constitution if "approved" by a majority of the voters.    It appears that the only method by which this "approval" might be ascertained is from the provisions of our election laws.    We have held on numerous occasions that "[t]he object of election laws . . . is to ascertain the popular will and to secure the rights of the duly qualified electors."    *Clancy* v. *Wallace*, 288 Mass. 557, 566.    *Crosby* v. *Election Commrs. of Newton*, 350 Mass. 544, 548.    *Swift* v. *Registrars of Voters of Quincy*, 281 Mass. 271, 276.    *Maiewski* v. *Registrars of Voters of Deerfield*, 347 Mass. 681, 682–683.

The main purpose of the election statute is to provide a convenient method for the voter qualified according to law to express in secret his preference for persons to be elected to the several offices to be filled, and on the questions to be answered at an election, and to have that expression of preference counted fairly and honestly, all in conformity to reasonable regulations.    The statutes of the Commonwealth contain in great detail requirements as to the preparation and distribution of ballots, the marking and deposit of them in ballot boxes, the counting of those ballots and the making of official returns of the results of the voting.    *Cole* v. *Tucker*, 164 Mass. 486.    *O'Brien* v. *Election Commrs. of Boston*, 257 Mass. 332.    This court has recognized that "if the Constitution requires a result, practical problems are immaterial.    However, when no previous decision or rule of law is applicable, public policy considerations are entitled to and are often given great weight."    *Opinion of the Justices, ante*, 895, 905.    It seems apparent from a review of the statute (G. L. c. 54) that it was intended to apply to proposed constitutional amendments and other questions as well as elections.    G. L. c. 54, §§ 43A,

48, 53, 54 and 58A. Therefore, we conclude that this article of amendment will become a part of the Constitution of the Commonwealth if adopted by the vote of the people at the election on the seventh day of November, but that it cannot take effect and become operative until the final tabulation and determination by the Governor and Councillors in accordance with G. L. c. 54, § 115. We find support for this conclusion in the fact that G. L. c. 54, § 135, makes provision for a Statewide recount relative to questions submitted to the people at the State election. If the amendment were effective immediately upon adoption by the people before tabulation and determination by the Governor and Councillors, it would, in the event of a recount which showed a different result, thwart the will of the electorate. In such a case, the judges affected by the amendment would have been required to retire immediately on November 7 and the Commonwealth would be without the services of these judges for an indefinite period unless and until conceivably some procedure for reinstatement could be devised. Other complications that might arise from such a situation are obvious and could result in judicial chaos. For example, the authority of new judges appointed in the interim might be in grave doubt.

We are of opinion that if the article of amendment becomes part of the Constitution by vote of the people it would take effect and be operative from the time of the final tabulation and determination in accordance with the provision of G. L. c. 54, § 115.

1. The answer to the first question submitted is, "Yes."

2. The answer to the second question is, "Yes."

G. JOSEPH TAURO.
JACOB J. SPIEGEL.
PAUL C. REARDON.
ROBERT BRAUCHER.
EDWARD F. HENNESSEY.
BENJAMIN KAPLAN.