THE STATE OF WASHINGTON, *on the Relation of Gladys Isham, Appellant,* v. THE CITY OF SPOKANE *et al., Respondents.*[1]

[1]Reported in 98 P. (2d) 306.

*Wright & Wright* and *A. C. Grady,* for appellant.

·  *G. M. Ferris, B. A. Farley,* and *Paul F. Schiffner,* for respondents.

ROBINSON, J.—This appeal is from an order sustaining a demurrer to relator's application for a writ of mandate and dismissing the action.

It appears from the application for writ of mandate that the charter of the city of Spokane created a civil service commission and directed the commission to make rules and regulations providing for the classification of all employees of the city, with the exception of certain appointive officers, for open competitive and free examinations as to fitness, for an eligible list from which vacancies should be filled, and for promotion on the basis of merit, experience, and record. The commission, in pursuance of this mandate of the charter, made rules and regulations, which were approved by the city council by ordinance duly enacted. Section 8 of Rule 2 provides:

"Police Matron: Applicants for Police Matron must be at least twenty-seven and not more than forty years of age. After application has been duly filed and before admission to the written examination, the applicant shall be subjected to a medical examination having reference to (1) weight, height and chest; (2) sight and hearing; (3) previous and present condition of health. The medical examiner shall report to the Commission in writing, the result of such tests upon a blank form provided by the Commission, and no applicant shall be admitted to the written examination who is not certified to be qualified in the aforesaid manner."

In 1934, a vacancy occurred in the position of police matron. An examination of applicants for the position was held by the civil service commission, and, as a result of such examination, relator attained position

No. 1 on the eligible list. Thereafter, respondent A. B. Colburn, commissioner of public safety, and Ira A. Martin, chief of police, requested the commission to certify the names of the three persons highest on the eligible list, which the commission did, and on June 28, 1934, relator was, by A. B. Colburn, commissioner of public safety, and Ira A. Martin, chief of police, appointed "Police Sub-matron." At the request of A. B. Colburn, relator obtained recommendations in writing of twenty women in good standing and residents of Spokane, recommending her for the position of police sub-matron. Respondent A. B. Colburn, as commissioner of public safety, has refused to allow relator to occupy the position of police matron. Relator was, and is, the only person having civil service rating sufficient to be eligible for appointment to the position of police matron.

On June 13, 1938, A. B. Colburn, as commissioner of public safety, notified relator in writing of the termination of her employment as police sub-matron. Relator appealed to the civil service commission from the order or notice terminating her employment, and, on July 14, 1938, the commission rendered its findings and decision, which was certified to the commissioner of public safety, as follows:

"In the matter of the appeal of Gladys Isham to this commission from her dismissal as Police Matron by City Commissioner Colburn, this commission finds as follows:

"That Gladys Isham passed a Civil Service examination for Police Matron and reached No. 1 on the list of eligibles. That she was appointed on July 6th, 1934, by Commissioner Colburn and Chief Martin. On August 11, 1934, one month and five days after this appointment, Commissioner Colburn reported to this office that the appointment was made inadvertently. This statement was not accepted by this commission.

The minutes of this commission and its files conclusively show this fact.

"In the case of Miss Isham, no complaint, as to her ability, was ever filed in this office.

"With these facts in mind, this commission is of the opinion that Gladys Isham was unjustly discharged in violation of the powers granted by the City Charter. And finds further that under the facts as stated, Gladys Isham is entitled to be restored to her position as Police Matron and that she be paid the compensation during her enforced absence from duty."

Section 5, Rule 12, of the civil service rules, provides:

"Decisions: A decision shall be rendered within ten days after the hearing. The finding of the Commission shall be certified to the discharging head and shall forthwith be enforced by such authority. The decision of the Commission shall be final."

This rule was complied with, but the respondent commissioner of public safety has refused to comply with the decision.

Relator prays that she be admitted to the position of police matron, and also that she be restored to the position of police sub-matron and paid the salary attached to that position from the time of her alleged wrongful discharge.

The decision of the court sustaining the demurrer was based on the ground that the rules and regulations of the civil service commission, including in the classified civil service the position of police matron, contravened chapter 15, Laws of 1893, p. 24.

The text of chapter 15, Laws of 1893, p. 24 (Rem. Rev. Stat., §§ 9282-9287 [P. C. §§ 666-671]), is as follows:

"Section 1. That there shall be annexed to the police force of each city in this state having a population of not less than ten thousand inhabitants one or more police matrons who, subject to the control of

the chief of police or other proper officer, shall have the immediate care of all females under arrest and while detained in the city prison until they are finally discharged therefrom.

"Sec. 2. Any person on the police force or, in their absence, any other person present must aid and assist a matron when from necessity she may require it.

"Sec. 3. For the purpose of effecting the main object of this act, no female under arrest shall be confined in the same cell or apartment of the city jail or prison, with any man whatever.

"Sec. 4. No person shall be appointed to the office of police matron unless suitable for the position, and recommended therefor in writing by not less than twenty women in good standing, and residents of the city where the appointment is made.

"Sec. 5. A police matron shall hold office for a period of four years, or until resignation, removal from the city or for cause; and for cause she may be removed at any time by a written order clearly stating the cause for her removal, when another matron must be appointed to fill the vacancy without unnecessary delay.

"Sec. 6. A police matron must be paid such compensation for her services as shall be fixed by the city council, and at such time as may be appointed for the payment of policemen."

The court, in its memorandum opinion, stated:

"There is nothing in the city charter touching the appointment of qualifications of a police matron. The charter merely creates a Civil Service Commission empowered to classify city employees and make rules. Section 8 of Rule 2 classifies police matrons. Without setting forth in detail all of these rules, I am of the opinion that such rules and regulations in the matter of control, qualifications and term of office contravene the legislative enactment. In other words, the State by general law has said that in order to assure the proper treatment of females under arrest and while confined in prison one or more police matrons shall be annexed to the police force of the city, subject to the

control of the chief of police or other proper officer, who shall have immediate care of all females under arrest and while detained in the city prison; that no person shall be appointed unless suitable for the position and recommended by not less than twenty women in good standing and residents of the city; that a police matron shall hold office for a period of four years or until resignation, removal from the city or for cause; that for cause she may be removed at any time by written order clearly stating the cause of removal, when another matron must be appointed to fill the vacancy without unnecessary delay. The Civil Service rules provide for age limits; the application requires the recommendation of only three citizens; requires physical and mental tests; the power of removal is abridged; the term of office is for no fixed period."

■ The relator contends that chapter 15, Laws of 1893 (Rem. Rev. Stat., §§ 9282-9287), which the court held was contravened, was, in fact, repealed by various later enactments. Chapter 241, Laws of 1907, p. 623 (Rem. Rev. Stat., § 9006 [P. C. § 714] *et seq.*), and particularly subds. 15 and 32 of § 29, p. 634, thereof (Rem. Rev. Stat., § 9034 [P. C. § 742]), is relied on in this connection, but that entire act applies to cities of the second class only. Chapter 17, Laws of 1911, p. 54 (Rem. Rev. Stat., § 8948 [P. C. § 697] *et seq.*), is also relied upon. But we think it cannot be seriously contended that that act had the effect of repealing any general laws. Relator further cites §§ 1, 3, and 4 of chapter 103, Laws of 1917, pp. 346, 347 (Rem. Rev. Stat., §§ 10204, 10206, and 10207 [P. C. §§ 3420, 3422, 3423]); but this statute is concerned with jails maintained jointly by cities and counties, and does not appear to conflict with the police matron act of 1893.

It is further contended that the act was repealed by chapter 13, Laws of 1937, p. 23 (Rem. Rev. Stat. (Sup.), §§ 9558a-1 to 9558a-26 [P. C. §§ 896-101 to 896-126]); but § 9558a-1 [P. C. § 896-101] provides:

"The provisions of this act shall have no application to cities and towns which at the present time have provided for civil service in the police department or which shall subsequently provide for civil service in the police department by local charter or other regulations which said local charter or regulations substantially accomplish the purpose of this act, . . ."

Since the city of Spokane had long before "substantially accomplished" the purpose of the act, the act would not apply to it in any way, and if the relator was not legally under civil service when the act was passed, it would not have the effect of altering her status, by repeal or otherwise. We are of the opinion that the whole of chapter 15, Laws of 1893, remained in force until the effective date of chapter 115, Laws of 1939, p. 327 (Rem. Rev. Stat. (Sup.), §§ 9285, 9286), that is, until twelve o'clock midnight, June 7, 1939.

■ The relator contends, in the alternative, that, even if chapter 15, Laws of 1893, was still in force at the time of her appointment and removal, the civil service system in Spokane in no way contravened it. It is well-settled that a city may enact local legislation upon subjects already covered by state legislation so long as its enactments do not conflict with the state legislation, *In re Ferguson,* 80 Wash. 102, 141 Pac. 322; and the fact that a city charter provision or ordinance enlarges upon the provisions of a statute by requiring more than the statute requires, does not create a conflict unless the statute expressly limits the requirements. 43 C. J. 219; *Bellingham v. Cissna,* 44 Wash. 397, 87 Pac. 481; *Seattle v. Proctor,* 183 Wash. 299, 48 P. (2d) 241.

■ It is also well-settled that a city may prescribe qualifications for municipal office in addition to those prescribed by the state statute. *State ex rel. Griffiths v. Superior Court,* 177 Wash. 619, 33 P. (2d) 94. See the

discussion of point [2] in this opinion, from which we quote, in part:

"The only attack made by the relator upon the charter is that it purports to superadd certain qualifications necessary for elective officers to those imposed by the legislature. Assuming, for the sake of argument, that the language of the charter is to be interpreted as, in fact, imposing superadded qualifications, it does not follow that it contravenes the statute. Had the framers of the charter sought to lessen the requirements demanded by the statute, a different question would be presented, for then the charter would be in direct conflict with the statute. But that is not the case here. Section 9929 merely provides that no person shall be competent to hold elective office unless he possesses certain qualifications. It does not say that no other requirements shall be prescribed, nor does it say that the political subdivision therein named may not impose restrictions not inconsistent with the statute."

We are of the opinion that the fact that the Spokane civil service rules provide for age limits and medical tests as to sight and hearing, etc., does not show a contravention of the statute of 1893. Nor do we think that the elaborate provisions for mental tests do so. These, we think, may be regarded as superadded qualifications, permissible under the rule above quoted from the *Griffiths* case. But we cannot escape the conviction that, in other respects, the requirements of the statute are lessened by the civil service system. We requote from the statute:

"Sec. 4. No person shall be appointed to the office of police matron unless suitable for the position, and recommended therefor in writing by not less than twenty women in good standing, and residents of the city where the appointment is made."

A portion of § 1, Rule 3, of the civil service rules, reads as follows:

"Every application must bear the certificate of three reputable citizens to the effect that they have known the applicant for at least one year; that they have read his statement and believe it to be correct; that they believe him to be of good moral character, of temperate and industrious habits, and in all respects fit for the service he wishes to enter."

Furthermore, the civil service rules contemplate permanent tenure. In a very real sense, the appointee gets a kind of property right in the position, and removal by the appointive power is subject to review and reversal by the civil service commission. The statute, however, provides:

"Sec. 5. A police matron shall hold office for a period of four years, or until resignation, removal from the city or for cause; and for cause she may be removed at any time by a written order clearly stating the cause for her removal, when another matron must be appointed to fill the vacancy without unnecessary delay."

Considering the nature and duties of the position, it is reasonable to suppose that the legislature set a high value upon the character of the incumbent, and hence, the requirement that she be vouched for by "not less than twenty women in good standing, and residents of the city where the appointment is made." The civil service regulations require merely a character certificate of "three reputable citizens." This is a definite lessening of the statutory requirement. Furthermore, the legislature provided that the tenure should be but for four years and then automatically end; and further, even during that period, for a peremptory, non-reviewable discharge for cause. The civil service system is almost, if not altogether, a direct antithesis of that. It contemplates a permanent tenure, under the protection of a commission with power to review.

We are not unmindful of the fact that the relator

alleges, and the demurrer admits, that the relator secured the signatures of twenty women in good standing in the community, recommending her appointment. But that fact is in no way material, except as tending to show a compliance with the statute; and, if the statute controls, as we hold it does, the order of the civil service commission, which this action seeks to enforce, is of no validity, force, or effect.

The judgment of dismissal is affirmed.

MAIN, STEINERT, and JEFFERS, JJ., concur.

BLAKE, C. J. (dissenting)—It seems to me this decision sacrifices substance to form. Unless the act of 1893 be considered as creating a political appanage to the office of police commissioner, application of the civil service provisions of the city charter to the position of matron of the city jail are not out of harmony with it. Of course, the sole purpose of the act (Chapter 15, Laws of 1893, p. 24, Rem. Rev. Stat., §§ 9282-9287) was to insure supervision of women prisoners by women. Presumably, at the time of the adoption of the city charter in 1911, someone held the position of matron at the city jail.

The charter created a civil service commission with power to classify all employees with the exception of day laborers and certain appointive officers. Specifically, it was provided:

"Employees within the scope of this article who are in office at the time of the adoption of this charter shall retain their positions unless removed for cause."

Commenting on this provision in *State ex rel. Powell v. Fassett*, 69 Wash. 555, 125 Pac. 963, this court said:

"In adopting the charter, the people of the city made it as plain as written language can make it that the merit system should thereafter obtain. It applies to all employees placed in the classified civil service list,

and the manifest intent was to classify such positions as offices, and to have such officers removable for cause only. . . . It is true that the commission could not provide for a classification of officers until after the election of the commissioners in March, 1911. Section 53, however, expressly continued in office all employees 'who are in office' at the time of the adoption of the charter, unless removed for cause. . . ."

I do not think any violence would be done to the act of 1893 to hold that the position of police matron was put within the jurisdiction of the civil service commission by the charter along with all other employees save those specifically excepted. To so hold would not impinge upon the substance or spirit of the act. The rule that charter provisions must give way to general law has no application to matters of strictly municipal concern. Charter provisions, even though they may conflict in certain details with general state law, will control if they are in harmony with public policy announced by general law. *Tremayne v. St. Louis,* 320 Mo. 120, 6 S. W. (2d) 935; *Consumers Coal Co. v. Lincoln,* 109 Neb. 51, 189 N. W. 643; *Eppley Hotels Co. v. Lincoln,* 133 Neb. 550, 276 N. W. 196; *Fitzgerald v. Cleveland,* 88 Ohio St. 338, 103 N. E. 512, Ann. Cas. 1915B, 106. The principle is peculiarly applicable to civil service provisions of city charters. *State ex rel. Votaw v. Matia,* 125 Ohio St. 598, 183 N. E. 533; *State ex rel. Lentz v. Edwards,* 90 Ohio 305, 107 N. E. 768. Upon authority of *Fitzgerald v. Cleveland, supra,* it was said in the last cited case:

"The manner of regulating the civil service of a city is peculiarly a matter of municipal concern. One of the powers of local self-government is the power of legislating with reference to the local government within the limitations of the constitutional provisions above referred to. As long as the provisions made in the charter of any municipality with reference to its civil service comply with the requirement of Section

10 of Article XV, and do not conflict with any other provisions of the constitution, they are valid and under the cases referred to discontinue the general law on the subject as to that municipality. That provisions adopted by a city might differ from the general laws within the limits defined was not only expected but the very purpose of the amendment was to permit such differences and make them effective."

That the civil service provisions of the city charter of Spokane are in harmony with the public policy of this state, as declared in various acts of the legislature, is too well known to warrant discussion.

I dissent.