295 P.2d 846

**Clarence A. FINCH, Petitioner,**

**v.**

**STATE DEPARTMENT OF PUBLIC WELFARE of the State of Arizona; Arizona State Board of Public Welfare; Ben Projan, Robert C. Bohannan, Jr., Alf B. Claridge, David M. Solomon, and Maria L. Urquides, Members of the State Board of Public Welfare, and Wayne B. Warrington, Commissioner of the Arizona State Department of Public Welfare, Respondents.**

**No. 6197.**

Supreme Court of Arizona.

March 27, 1956.

Gust, Rosenfeld, Divelbess & Robinette, Phoenix, for petitioner.

Robert Morrison, Atty. Gen., and Ragan & Rehnquist, Phoenix, Sp. Counsel, for respondents.

LA PRADE, Chief Justice.

At the instance of petitioner, Clarence A. Finch, this court issued an alternative writ of mandamus directed to respondents compelling them to reinstate him to his position as Director of Public Welfare of Maricopa County, from which he had been involuntarily retired, or show cause for not so doing. By their response and in their briefs respondents have contended that they acted within their lawful authority in retiring petitioner and for that reason the writ should be quashed.

The uncontroverted facts are as follows: Finch was the Director of Public Welfare of Maricopa County from 1937 until September 30, 1955. On August 20, 1955 petitioner attained the age of sixty-five years. On August 3, 1955 Finch was advised by Wayne B. Warrington, Commissioner of the Arizona State Department of Public Welfare, that he would be retired as of September 30, 1955, pursuant to the established policy of that department, retiring employees upon attaining the age of sixty-

five years. Petitioner appealed this decision to the State of Arizona Merit System Council which, after a hearing, made and submitted to the Board of Public Welfare its findings and recommendation to the effect that the Board had no authority to compel petitioner to retire for the reason stated. The Board apparently considered said findings and recommendation, but, believing it had such authority, refused to reverse its decision to retire petitioner.

The sole question before this tribunal is whether the State Department of Public Welfare has the authority to compel its employees to retire before they reach the age of seventy, which age is the compulsory retirement age as set by the Public Employees' Retirement System Act (hereinafter referred to as the "Retirement Act"), Sections 12–837 to 12–861, 1954 Supp.A.C.A.1939, Section 38–741 et seq., A.R.S.1956. If the authority existed then the Board's action was lawful and the writ should be quashed; if not, it was illegal and a peremptory writ should issue.

The correct determination depends upon the construction to be given to Section 12–844(e) of the Retirement Act [A.R.S. § 38–759, subd. F], as well as the amendment of Section 70–108(d), A.C.A.1939 [A.R.S. § 46–114, subd. A, par. 5], dealing with the Department of Public Welfare. Section 12–844(e) in part reads as follows:

"All state officers and employees and officers and employees who are declared to be subject to chapter 128, Laws of 1953 (Sections 12–837—12–861), by the legislature, * * * who shall have attained or exceeded the age of seventy years on and after July 1, 1954, shall be compulsorily retired and shall not be compensated for state service nor be paid retirement benefits of any kind except as provided by chapter 128, Laws of 1953."

Section 70–108(d) before amendment in part read as follows:

"Personnel.—The board shall have the power and it shall be its duty to:

* * * * * *

"(d) * * * provide for a fair and impartial system of separation from service through resignation, *retirement,* or removal. * * *" (Emphasis supplied.)

After the amendment deleting the word "retirement" the above section was renumbered as Section 70–109(a) (4) and in part reads as follows:

"* * * provide for a fair and impartial system of separation from service through resignation or removal. * * *"

In order to properly understand these sections it is necessary to examine their respective backgrounds. The Retirement Act was enacted in 1953, superseding an act containing somewhat similar provisions, which had been adopted as an initiative measure in 1948, Section 12–801 to 12–

828, 1952 Cum.Supp.A.C.A.1939, and subsequently repealed by a referendum measure adopted at the 1952 general election. Apparently the reason for the repeal was to give Arizona an opportunity to enact new "retirement" legislation which would permit its employees to fall within the purview of the federal social security system, pursuant to a 1951 amendment to that law. In any event it is significant that in 1948 the people of Arizona, by initiative, set up for the first time a general retirement system for state employees. It is equally significant that immediately prior to the adoption of this retirement system in November, 1948, the legislature, in a special session ending in October, 1948, amended Section 70-108(d) relating to the Department of Public Welfare, by deleting the word "retirement" therefrom. This amendment became effective October 25, 1948 as an emergency measure. Petitioner argues that this amendment was undoubtedly made in order that the Welfare Act would be in harmony with the initiative retirement measure if adopted. Respondents argue that this could not have been the case since the aforementioned amendment was passed by the legislature approximately one month before the initiative measure was adopted by the voters. But respondents fail to explain what the purpose of the legislature could have been in deleting the word "retirement" from the welfare law if it were not to bring the Welfare Act into harmony with the prospective initiative measure (retirement law filed in office of Secretary of State, June 30,

1948) except to point out that no retirement system had been set up under Section 70-108(d), with the result the retirement provision therein provided for was a dead letter. No other reason is offered by respondents for the amendment. As we said in Beach v. Superior Court of Apache County, 1946, 64 Ariz. 375, 173 P.2d 79, 81, there is a duty on the courts "to give effect" to statutory amendments since it is presumed that the legislature by amending a statute intends to make a change in existing law. In view of the fact that the voters were to be presented with the opportunity of enacting a general retirement law at the next election, then only a few weeks hence, in the absence of any other allegedly good reason for the amendment, we believe that the legislature amended the section in order to avoid any duplication or overlapping in the law governing the retirement of state employees, if adopted. The mere fact that the people instead of the legislature created the retirement system in 1948 is immaterial, and does not prevent the amendment in question from being construed as being in harmony with such system. In any event, once the legislature did enact the present Retirement Act in 1953 without changing the existing provisions of Section 70-109 (a) (4), Welfare Act, it would appear beyond all doubt that the legislature intended the Retirement Act, to the exclusion of all others, to cover all phases and conditions of retirement, within the Department of Public Welfare, if not all other state agencies and departments. "The cardinal principle of

230

statutory interpretation is that the intent of the legislature is to be ascertained and followed." Mendelsohn v. Superior Court, 1953, 76 Ariz. 163, 169, 261 P.2d 983, 987. Another fundamental rule of statutory construction requires the court, when dealing with separate statutes, to construe them so as to give meaning to both of them, if possible. Industrial Commission v. School Dist. No. 48, 1941, 56 Ariz. 476, 108 P.2d 1004.

Respondents argue that the contents of Section 70–109(a) (4) both before and after the amendment in 1948 were not a grant of powers to the Department, but, on the contrary, a limitation on the authority to hire and fire which a state administrative agency has in the absence of legislation. From this premise, so respondents contend, it follows that the elimination of the word "retirement" from the provision did not serve to decrease the power of the Department, but to increase it. Put in another way, under the prior law the Department of Public Welfare was obligated to "provide for a fair and impartial system of separation from service through * * * retirement * * *", but after the amendment the Department had no limitations upon its authority to retire employees, except such as the prospective initiative measure might, if adopted, impose. And, if as respondents further contend, the Retirement Act simply places an upper limit, age seventy, on a person's employment in state government service, then the Department, under its inherent powers, has the right to set a lower compulsory retirement age. We cannot agree with this line of reasoning. Section 70–109(a) (4) may well be a limitation rather than a grant of authority as to the inherent right of a governmental agency to dismiss its employees without cause, but it does not follow that the section also constitutes a limitation rather than a grant of power as far as retirement of employees is concerned. Dismissing an employee is one thing; separating for age or retiring him under a plan or system whereby he receives a pension is another. Respondents cite two cases, State v. Archibald, 1896, 5 N.D. 359, 66 N.W. 234, and State ex rel. Johnson v. Myers, 1945, 74 N.D. 678, 19 N.W.2d 745, as to the plenary power of state instrumentalities to hire and fire in the absence of legislation, but no authority is cited to indicate that such bodies have an inherent right to create a retirement system for employees and provide public funds therefor. Under the common law it is quite doubtful that this authority existed. See United States v. Vogue, Inc., 4 Cir., 1944, 145 F.2d 609; Woods v. Nicholas, 10 Cir., 1947, 163 F.2d 615. It appears to be entirely statutory. Obviously then, when the section in question was amended so as to eliminate the word "retirement" it follows that thereafter the Department had no authority to retire employees pursuant to a plan or system not provided for by legislation. But did the Department still retain its inherent power to separate for age? We think not. Of course, it still had power to dismiss for

cause, but insofar as that power included authority to establish a maximum age of employment, i. e., separate for age, that authority had become merged into the provision for retirement of the original section, Section 70–108(d), and therefore when said section was amended and the retirement system created in 1948, the power to separate for age or retire employees was withdrawn from the powers of the Department of Public Welfare.

The intention and purpose of the legislature in amending Section 70–108(d) becomes even more obvious when the Retirement Act alone is considered. As did its predecessor, it creates a comprehensive and detailed plan or system covering all phases of retirement of state employees. By its declaration of policy it provides "a retirement system supplemental to federal social security now applicable to state employees", Laws 1953, c. 128, and sets forth in detail the method of determining eligibility for receiving benefits; the amount to be contributed by employer and employee; the amount of pension to be paid in each instance; provisions for those whose employment is terminated before reaching retirement age, or who are forced to retire due to disability; provisions for lieu pensions and survivors' benefits, as well as investments and the administration of the retirement fund. One section, section 15, creates a Retirement Board with power to "adopt, amend, or rescind regulations for the administration" of the Act. Another section gives political subdivisions the option to adopt a supplemental retirement system for their employees, but such system must provide the same retirement benefits and require the same obligations for entitlement as the Retirement Act provides for employees covered by it.

Section 12–844 deals specifically with the age of retirement, with subdivision (e) making retirement compulsory at age seventy. Subdivisions (b) and (a) permit employees to retire voluntarily at ages sixty and sixty-five, respectively. When this section is considered alone, and not in conjunction with Section 70–109(a) (4), as amended, it would seem that the legislature in making retirement mandatory at age seventy, while giving employees the right to retire earlier if they so chose, intended to exclude compulsory retirement at an earlier age. Clearly, if the legislature had desired the departments and agencies covered by the Retirement Act to have the authority to compel retirement before age seventy it could easily have done so. By giving employees the option to retire at sixty, we believe the legislature intended to deny state agencies the right to compel them to retire at that age. The entire context of Section 12–844 indicates that employees have no right to work past the age of seventy (with certain exceptions), with a correlative right not to be forced to retire before that age.

■ Considering the very comprehensive nature of the Retirement Act, treating every phase of the subject with such partic-

ularity, we believe the absence of language in Section 12–844 granting the state departments covered by the Act the authority to compel retirement at an age under seventy was intentional, and, as a result, that such authority does not exist.

In view of the above, the action taken by respondents herein was without authority, the writ should be made peremptory, and it is so ordered.

UDALL, WINDES, PHELPS and STRUCKMEYER, JJ., concur.