[No. 44584. En Banc. June 29, 1978.]

JANE EAGAN, *Appellant,* v. JOHN D. SPELLMAN,
ET AL, *Respondents.*

*Walthew, Warner, Keefe, Arron, Costello & Thompson,* by *Thomas P. Keefe,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Richard W. Elliot, Deputy,* for respondents.

*John A. Granger* on behalf of American Civil Liberties Union and American Association of Retired Persons, amicus curiae.

DOLLIVER, J.—Plaintiff applied for a writ of prohibition to restrain King County from terminating her employment solely for the reason she had reached her 65th birthday. The trial court dismissed the writ. The case comes to us on certification from the Court of Appeals.

In 1966, at the age of 56 years, Jane Eagan was hired by King County, having previously been employed by the county from 1938 to 1942. At the time of her 1966 employment, the mandatory age of retirement in King County for persons in her classification was 70 years. In 1968, a home rule charter was adopted by the voters of King County, establishing, among other things, a personnel system which provided for two categories of employees, career service and exempt personnel. In 1970, the King County Council enacted ordinance No. 422, King County Code § 3.12.060(j), which reduced the mandatory age of retirement from 70 to 65 years.

At the time of her 65th birthday on October 31, 1975, plaintiff was the confidential secretary to the director of rehabilitative services for King County. She was at this

time an "exempt" employee. When she became an employee of King County in 1966, plaintiff became a member of the Washington Public Employees' Retirement System (PERS) and continued as a member until November 1, 1975, when, under the terms of King County ordinance No. 422, she was required to retire. The record shows the director of rehabilitative services wanted to retain her. There is no indication in the record that she was required to retire other than because of her age.

Plaintiff raises four issues relative to the King County mandatory retirement provision: (1) It does not apply to her because of her status as an exempt employee; (2) it violates RCW 49.60, the state law against discrimination; (3) it violates the equal protection and due process clauses of the federal and state constitutions; and (4) it violates her rights under PERS, RCW 41.40, particularly RCW 41.40.180(2). Because we hold King County ordinance No. 422 does violate the rights of plaintiff granted by RCW 41.40, we need not and do not consider her other contentions.

Under PERS (RCW 41.40) at the time Eagan became a member, she was entitled to a "retirement allowance" at the rate of 2 percent of her "average final compensation" for each year or fraction of a year of membership service (RCW 41.40.185(2)), but her total annual retirement allowance could not exceed 60 percent of her average final compensation; that is, in computing the total percentage of average final compensation, no more than 30 years would count. RCW 41.40.185(3). The age for mandatory retirement under PERS in 1966 was 70 and has continued to be 70 to the present time. RCW 41.40.180(2). Without considering the 1938–1942 employment on which the record is unclear and which is not relevant for purposes of this case, at the time plaintiff became a member of PERS in 1966, she had a potential retirement allowance at age 70 of 14 years at 2 percent per year of service or 28 percent of her average final compensation. Under the subsequently enacted 65–year mandatory retirement, her potential was

reduced to 9 years at 2 percent per year, or 18 percent of her average final compensation. Thus, the same pension opportunities available to plaintiff at the time of her employment were denied to her at the time of her termination.

A considerable list of authorities have been brought to our attention for the proposition that there can be a non-discriminatory regulation of tenure, that this does not unconstitutionally interfere with preexisting pension rights, and that public employment is not a vested property right. Agreed. However, this analysis is relevant only if the matter before us is characterized as a matter of tenure rather than pension rights. But calling it tenure does not overcome the fact that we are really dealing with the pension rights and expectations of the plaintiff.

Two questions are presented: (1) Is the changing of the age of retirement by King County from 70 to 65 and the termination of plaintiff's employment at age 65 a matter of pension rights rather than a matter of tenure?, and (2) If the case concerns pension rights, is the reduction of the retirement age from 70 to 65 invalid as it affects the plaintiff? We answer both of these questions in the affirmative.

The time when members of PERS must retire is covered by the pension statute. RCW 41.40.180. On the other hand, the actual length of service to be credited to PERS for plaintiff or any member depends upon factors completely outside of PERS and which are unrelated to pension consideration, *e.g.*, death, disability, voluntary quit, removal for cause, removal at pleasure of hiring authority (the situation with plaintiff and other exempt employees), elimination of the position by the employer, and reduction in force. These are truly matters of tenure and as such have no relationship to pension rights. *See* King County Charter, art. 5, § 510; King County Code, title 3.

Whether plaintiff *actually* receives 28 percent of her average final compensation is dependent upon her maintaining her employment, *i.e.*, tenure. This is totally outside the purview of RCW 41.40.

But in addition to the *actual* length of service credited to PERS, which depends upon maintenance of employment, there is a *potential* length of service which is part of the pension system, is controlled by that system, and is part of that bundle of rights which is granted to each person who is a member of the system. *See Washington Ass'n of County Officials v. Washington Pub. Employees' Retirement Sys. Bd.*, 89 Wn.2d 729, 575 P.2d 230 (1978).

At the time she became a member of PERS, Eagan acquired a vested right to a potential date of retirement and is entitled to have this right mature into a retirement allowance at age 70, subject, of course, to not being separated from employment by factors outside of PERS, *i.e.*, factors truly relating to tenure. *See Dorward v. ILWU–PMA Pension Plan*, 75 Wn.2d 478, 452 P.2d 258 (1969); *Washington Ass'n of County Officials v. Washington Pub. Employees' Retirement Sys. Bd., supra.*

In *Bakenhus v. Seattle*, 48 Wn.2d 695, 700, 296 P.2d 536 (1956), we stated:

> There are cases which hold that, since the right to receive a pension does not arise until all the conditions are fulfilled, the employee's rights must depend upon the law as it exists at that time. This view is insupportable. Unless the services are rendered in reliance on an offer, they are consideration for nothing, and any pension received thereafter can only be a gratuity. The promise on which the employee relies is that which is made at the time he enters employment; and the obligation of the employer is based upon this promise.

*See also Vallet v. Seattle*, 77 Wn.2d 12, 459 P.2d 407 (1969); *Leonard v. Seattle*, 81 Wn.2d 479, 503 P.2d 741 (1972).

In 1966, plaintiff was promised by King County that if she entered into employment she became entitled to certain benefits under the Washington Public Employees' Retirement System. Among these benefits was the opportunity, *unless otherwise separated from county employment*, to continue to work until age 70. Plaintiff accepted employment in reliance upon this obligation and promise of King

County. It is conceded plaintiff was separated from employment not because of any of the usual reasons which determine length of service, but *solely* because of her age. This was in violation of the agreement made with her by King County. The county cannot now by the back–door device of early retirement under the personnel ordinances fail to follow its promises made under the pension statutes.

It would be anomalous at best for King County to promise an employee that she may receive a pension of a certain amount when prescribed conditions have been satisfied and then in effect amend the language of the pension statutes so that the conditions could never be fulfilled.

An additional reason to question the validity of this back–door amendment of RCW 41.40 is that the amendment of a state statute is not being accomplished through normal legislative channels but rather is being done by a political subdivision, King County, which has been admitted to PERS. *See* RCW 41.40.010(4). Even if it were assumed for the sake of argument that the State had the power to change the age of retirement in PERS so as to affect present members, such a power to amend state law should hardly rest in a constituent member.

A number of cases in support of the position of defendants have been brought to our attention: *Kingston v. McLaughlin,* 359 F. Supp. 25 (D. Mass. 1972); *Miller v. State,* 18 Cal. 3d 808, 557 P.2d 970, 135 Cal. Rptr. 386 (1977); *Coopersmith v. Denver,* 156 Colo. 469, 399 P.2d 943 (1965); *Peters v. Springfield,* 57 Ill. 2d 142, 311 N.E.2d 107 (1974); *McCarthy v. Sheriff of Suffolk County,* 366 Mass. 779, 322 N.E.2d 758 (1975); *Humbeutel v. New York,* 308 N.Y. 904, 126 N.E.2d 569 (1955); *Boyle v. Philadelphia,* 338 Pa. 129, 12 A.2d 43 (1940); *Gardner v. Nation,* 522 P.2d 1281 (Wyo. 1974). Although the factual situation varies in each of these cases, in none of them does the court hold a government employee had a cause of action when forced to retire upon the lowering of the age of retirement.

It should be noted that the *Coopersmith* and *Kingston* cases involved only the bare right to continue employment

and were, in effect, tenure cases. In each case, even though there was early retirement, the court specifically found there was no showing of reduced pension or the loss or forfeiture of any pension rights. This is in complete contrast to this case where early retirement will significantly affect plaintiff's pension rights.

The strongest case for defendants' position is *Miller v. State, supra,* which is directly in point and is from a state whose statutes and case law have been very similar to ours.

However, the court in *Miller,* as in the other cases cited, makes the fundamental error of classifying, without question or analysis, the age of retirement for an employee under a public pension system as a matter of tenure rather than pension rights. The *Miller* court states, at page 817, "[Plaintiff's] right to receive such [pension] benefits was subject to conditions and contingencies; specifically, that he remain in state employment until age 70", and "Although he was entitled to earn increased pension benefits so long as he remained in state employment, as we explained above, plaintiff had no vested contractual right to continue working for any specified period of time."

The same faulty analysis was made in *McCarthy v. Sheriff of Suffolk County, supra,* where the court stated, at page 784:

> We cannot say that the plaintiffs, in accepting employment with the Commonwealth and in joining the retirement plan, could have had a reasonable expectation that they would be guaranteed employment as court officers until age seventy, considering the extensive power of the Legislature to change, or in fact to do away with, their positions.
> . . . Accordingly, we hold that § 25(5) [forbidding alterations depriving employees of pension rights or benefits] was intended to create pension security, not job security, and that the plaintiffs have no vested contractual rights to continuation in office.

The whole discussion of a vested contractual right pertaining to continued state employment simply demolishes a straw man. No contention was made in *Miller* nor is any

contention made here that plaintiff might not properly be separated from service by factors not related to the pension system. But when the termination of employment is only for a reason specifically covered in PERS, the matter no longer concerns tenure but goes directly to pension rights guaranteed by *Bakenhus* and its successors.

While this court should have great respect for the California courts and for other jurisdictions which have considered similar cases, we are not bound by their views. We need not question the ability of public employers to terminate their employees nor the tenure rights of such employees. These matters are dealt with under other statutes and have been and possibly will be considered again by this court in other cases. Here we need to avoid confusing rights of tenure with pension rights, and when the latter are involved, as here, to make certain a public employee receives the rights guaranteed by this court.

While it distinguishes but does not overrule *Humbeutel v. New York, supra,* the New York Court of Appeals in *Donner v. New York City Employees' Retirement Sys.,* 33 N.Y.2d 413, 308 N.E.2d 896, 353 N.Y.S.2d 428 (1974), adopted an analysis which is analogous to our views and is helpful in illustrating the difference between pension rights and tenure. In *Donner,* petitioner retired from employment with the City of New York in 1955 when the pension system provided that a member who had retired and had been receiving a retirement allowance had the right to again become a member of the retirement system if he were reemployed by the City of New York. Prior to petitioner's reemployment by the City (he was 67 when reemployed), the administrative·code of the City was changed, reducing the age at which a person could reenter the retirement system from 70 to 65. In holding the change impermissible, the Court of Appeals said, at page 416:

> We find no merit in the Retirement System's argument that the amendment in question affected no protected benefit of Donner's since he had no right requiring the

city to re–employ him. Prior to the passage of the complained of amendment, Donner could have rejoined the Retirement System if he were rehired by the city. This opportunity to re–enter the Retirement System, while conditional upon being rehired by the city, was nevertheless a retirement benefit. The city was not obliged to re–employ Donner, but having done so, the conditional aspect of the benefit was satisfied and Donner had a right to be re–enrolled as a member . . .

. . . [This] analysis is anchored by [the] fundamental principle that a benefit may be conditional and still be constitutionally protected . . .

(Citations omitted.)

Since this case concerns pensions—not tenure—we turn to the interpretation given in our previous decisions to the question of pension rights for public employees.

We have held that a public employee who comes under a pension system contracts for certain rights and expectations which cannot be lessened by the governmental authority absent the occurrence of specific circumstances.

In *Bakenhus v. Seattle*, 48 Wn.2d 695, 701, 296 P.2d 536 (1956), we stated:

Under . . . the rule which we adopt here, the employee who accepts a job to which a pension plan is applicable contracts for a substantial pension and is entitled to receive the same when he has fulfilled the prescribed conditions. His pension rights may be modified prior to retirement, but only for the purpose of keeping the pension system flexible and maintaining its integrity.

Two years later, in *Eisenbacher v. Tacoma*, 53 Wn.2d 280, 283–84, 333 P.2d 642 (1958), we addressed the same question and said:

An employee who accepts a job to which a pension and relief plan or system is applicable contracts for a pension and relief plan or system substantially in accord with the then existing legislation governing the same; modifications of a pension plan or system cannot be imposed on the employee unless the changes are equitable to the employee.

*Accord, Letterman v. Tacoma,* 53 Wn.2d 294, 333 P.2d 650 (1958).

In *Tembruell v. Seattle,* 64 Wn.2d 503, 506, 392 P.2d 453 (1964), we held:

> Pension rights thus vesting from the inception become a property right and may not be divested except for reasons of the most compelling force.

What are these "reasons of the most compelling force"? They must be (1) for the purpose of keeping the pension system flexible (*Bakenhus v. Seattle, supra*); and (2) for the maintenance of the integrity of the system. *Bakenhus v. Seattle, supra.* We have further held that any change must be equitable to the employee or, put another way, any change which results in a disadvantage to the employee must be accompanied by comparable new advantages. *See Bakenhus v. Seattle, supra,* and *Eisenbacher v. Tacoma, supra.*

In *Dailey v. Seattle,* 54 Wn.2d 733, 738, 344 P.2d 718 (1959), we held that members of a public pension system "will be presumed to have acquiesced in legislative modifications that do not unreasonably reduce or impair existing pension rights; or, stated positively, if the modifications are reasonable and equitable." We further stated in *Dailey,* at pages 738–39:

> That an act of the legislature, making a change in pension rights, will be weighed against pre–existing rights in each individual case to determine whether it is reasonable and equitable. If the over–all result is reasonable and equitable, the employees (prospective pensioners) will be presumed to have acquiesced in the modifications; if the over–all result is not reasonable and equitable, there will be no such presumption.

Here there is no contention by King County nor was any evidence offered that the lowering of the age of retirement from 70 to 65 was necessary to maintain the integrity of the system or to make the system more flexible. *See Bakenhus*

*v. Seattle, supra* at 702. Standing alone, the reduction of the pension potential promised to plaintiff from 28 percent to 18 percent of average final compensation is hardly reasonable or equitable and there are no comparable new advantages to plaintiff. The lowering of the age of retirement from 70 to 65 is in fact a reduction of plaintiff's pension rights prior to her retirement, and this reduction does not meet the tests previously enunciated by this court.

Beginning with *Bakenhus,* we have protected the pension rights of public employees from unwarranted administrative and legislative tampering. We continue this protection and refuse the invitation to confuse pension with tenure.

The trial court is reversed and the writ is granted.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, and HICKS, JJ., concur.

ROSELLINI, J. (concurring)—It is of interest to note what has occurred since 1970, when the age of retirement was reduced from 70 to 65. King County ordinance No. 3337, approved on August 16, 1977, provides in part:

> Retirement from county employment shall be in accord with the provisions set forth in RCW 41.40. For employees hired on or before September 30, 1977, retirement from regular county employment shall occur on the first of the month following the occurrence of the seventieth birthday. For employees hired after September 30, 1977, there shall be no mandatory retirement age.

Thus it will be seen that, whatever the reasons for reducing the mandatory retirement age in 1970, they were found invalid by 1977. Certainly there has been no showing that the 1970 change was designed to preserve or improve pension benefits.

It is necessary to understand the proper legal significance of the rights in a pension plan. In *Bakenhus v. Seattle,* 48 Wn.2d 695, 699–70, 296 P.2d 536 (1956), we quoted with approval the following language from *Baker v. Retirement Bd.,* 374 Pa. 165, 97 A.2d 231 (1953):

"As of the time he joined the fund, his right to continued membership therein, under the same rules and regulations existing at the time of his employment, was complete and vested. The legislature could not thereafter constitutionally alter the provisions of his already existing contract of membership. His rights in the fund could only be changed by mutual consent: *Marshall v. Pilots Assn.,* 206 Pa. 182, 55 A. 916."

Thus it is seen that a public employee has a vested right in the pension plan at the time the employee enters public service. This right cannot be defeated by changing the terms of the contract with respect to pension rights. Employee rights cannot be impaired.

This does not mean that the public employer cannot change a pension plan, but a new plan can apply only to employees who join public service after the plan has been adopted. But, under *Bakenhus,* even this cannot be done in a manner which undermines the financial integrity of the existing system.

Employees weigh the value of their expected pension when deciding where to work or whether to stay in certain employment. Accordingly, they are making an investment similar to the purchase of an annuity or an insurance contract.

I join with Justice Dolliver, where he states:

Beginning with *Bakenhus,* we have protected the pension rights of public employees from unwarranted administrative and legislative tampering. We continue this protection and refuse the invitation to confuse pension with tenure.

HAMILTON, STAFFORD, BRACHTENBACH, and HICKS, JJ., concur with ROSELLINI, J.

HOROWITZ, J. (dissenting)—The majority opinion holds Ms. Eagan's retirement rights are governed by RCW 41.40 (PERS), mandating retirement of a government employee at age 70, and that her discharge upon attaining the age of 65, although authorized by King County ordinance No. 422, § 3.12.060(j) was wrongful.

At the outset it is important to note what the majority does not hold. First, it does not hold that a mandatory retirement age fixed by statute or ordinance is unlawful per se on due process or equal protection grounds. Indeed, the majority enforces the 70–year mandatory retirement age fixed in PERS (RCW 41.40.180(2)). Second, the majority does not hold that her discharge violated the state law against discrimination, RCW 49.60, particularly in light of the statutory prohibition against discrimination against employees between the ages of 40 and 65 on the basis of their age found in RCW 49.44.090. Third, the majority does not hold that ordinance No. 422, § 3.12.060(j) is not by its own terms applicable to Ms. Eagan. Fourth, the majority does not hold Ms. Eagan was not an "exempt" or "noncareer" employee who is required to "serve at the pleasure of the appointing authority" under King County ordinance No. 422, § 3.12.020(g), or that her employment under the terms of the King County ordinance constituted anything other than employment terminable at will as distinguished from employment terminable for cause. *See* RCW 41.06-.170. Finally, the majority does not hold that Ms. Eagan was not lawfully terminated if the 70–year age retirement provision of PERS is inapplicable to terms of tenure set by ordinance.

The sole question, then, is whether Ms. Eagan, a county employee terminable at will and lawfully retired at age 65 under the terms of ordinance No. 422, § 3.12.060(j), is nevertheless entitled to work until attaining the age of 70 because PERS provides that government employees enrolled in the employee pension fund may work until that age. The majority holds she is.

The majority's sole argument is that under the rationale of *Bakenhus v. Seattle*, 48 Wn.2d 695, 296 P.2d 536 (1956) and the decisions following it, the PERS statute gave Ms. Eagan an enforceable, contractual right to continued employment to age 70, notwithstanding the fact she is employed under an ordinance making her employment terminable at will. The basic thrust of the argument is that

after Ms. Eagan was employed by the county the first time and began making payments into the PERS retirement fund for government employees, the county had no right to deprive her of an allegedly promised mandatory retirement age of 70 by changing the terms of her employment from those of her original, unspecified job to an employment which was terminable at will. Although not so stated, the opinion in effect holds that it was a breach of Ms. Eagan's employment contract to do so, or that to do so would impair her contractual rights in violation of the federal or state constitution.

In order to understand the majority's essential error it is important to make clear both what PERS provides, and what *Bakenhus v. Seattle* actually held. The relevant PERS provision is RCW 41.40.180(2). This section provides that any member of the retirement system who has attained the age of 70 "shall be retired forthwith." The statute thus places an outside limit on accrual of pension rights. Pension benefits may continue to accrue only until an employee reaches the age of 70. The statute does not mean that an employee may not be lawfully discharged before that time, but only that he or she must be discharged upon attaining the age of 70. Significantly, no argument is made that the intent of RCW 41.40.180(2) is to limit the power of the county to control tenure of government employment. Tenure is a condition of employment which, as discussed below, is within the power of the hiring governmental authority to regulate unilaterally. Nor does the language of the PERS statute reveal an intent to preempt the field of tenure. In the absence of clear evidence of such an intent, it is improper to construe a pension statute as having such an effect. Thus the only proper construction of RCW 41.40.180(2) is that it sets an outside limit on the period of time during which a government employee may accrue pension rights under PERS.

*Bakenhus v. Seattle, supra,* held that pension benefits already accrued under a governmental employees' pension act may not be unilaterally reduced without the employees'

consent. In *Bakenhus* a retired policeman challenged an amendment to the Police Relief and Pension Act of 1909 which placed a dollar limit on the monthly pension benefits allowed any member. The effect of the amendment was to reduce the petitioner's guaranteed benefit from $185 to $125 per month. This court held the amendment impaired his vested right to pension benefits as that right existed at the time he became a member of the police department. The court reasoned a pension in Washington does not constitute a mere gratuity, but is in the nature of deferred compensation for services rendered. *Bakenhus v. Seattle, supra* at 698. The pension benefits claimed were treated as part of an employee's contemplated compensation, which the State could not unilaterally reduce without the employee's consent. The doctrine of *Bakenhus,* later explained in *Leonard v. Seattle,* 81 Wn.2d 479, 503 P.2d 741 (1972) is that a pension is a right to deferred compensation "supported by consideration in the form of work performed and contributions made by an employee in the public service". *Leonard v. Seattle, supra* at 486. This pension right, under the doctrine of *Bakenhus,* may not be unilaterally impaired by the State.

The ordinance complained of in this case requires King County employees to retire at age 65. In doing so (unlike the statute challenged in *Bakenhus*) it does not impair Ms. Eagan's right to the deferred compensation promised by PERS. The benefits she has earned through public employment have not been diminished.

The King County ordinance simply exercised the unchallenged right of the county to control the terms of public employment, of which tenure is one. Eagan's internally contradictory claim, adopted by the majority, is that her contract with PERS created a contract for *employment* until she reaches the age of 70, not a contract for deferred compensation for work actually performed. Such a result conflicts with the nature of her employment as terminable at will, for a noncareer employee can be dismissed at any time "at the pleasure of the appointing authority." King

County Code § 3.12.020(9). The astonishing effect of the rule adopted by the majority is to create, by means of a statutory *pension* scheme, a contract for *tenure* of employment for all employees who are members of that scheme, even those noncareer employees without the benefits of civil service protections, whose service is terminable at the will of the employer.

The defect in the majority's position is that it confuses the contract right to deferred compensation for work performed (in the form of a pension) with regulation of a term of public employment (tenure) which is the unchallenged right of the county to exercise unilaterally. Pension benefits are guaranteed by contract, and RCW 41.40.180(2) sets one of the conditions of membership in PERS. Tenure, however, is a term of employment, not of pension rights. To characterize the issue as one of pension rights rather than tenure (contrary to all the cases which have considered the matter, as next discussed) only obscures the analysis. *All* the cases we have found dealing with the problem of the relationship between tenure and pension rights have distinguished tenure as a condition of employment unrelated to the contract rights involved in a pension scheme. All these cases· have held tenure to be a term of public employment controlled by statute or ordinance which may be altered without violating the impairment of contract clause because of pension rights. We have found no authority to the contrary, and the majority points to none. We can only conclude that when Ms. Eagan was forced to retire at age 65 (which the county, in any case, could have required of a noncareer employee who is dischargeable without cause), she was lawfully discharged from her public employment, and her contract rights with PERS were not impaired.

A recent case directly on point is *Miller v. State,* 18 Cal. 3d 808, 557 P.2d 970, 135 Cal. Rptr. 386 (1977). The employee there had begun working for the state at a time when the mandatory retirement age was 70. The retirement age was later lowered to 67. Although pension benefits were increased at the same time, the effect of the new statute

was to reduce the total retirement benefit the employee could earn. The plaintiff claimed his contract of employment had been unlawfully impaired.

The California Supreme Court held an employee has no right to continue in public employment contrary to the terms fixed by law, and that public employment is held by statute, not by contract. The court further held that plaintiff's reliance on the contract obligation of vested pension rights was misplaced. The leading case holding that pension rights are obligations protected by the contract clause, *Kern v. Long Beach,* 29 Cal. 2d 848, 179 P.2d 799 (1947), cited with approval and relied upon in *Bakenhus,* specifically approved the doctrine that the right to continued public employment is not held by contract. *Kern v. Long Beach, supra* at 853. The court in *Miller,* quoting *Kern* further explained:

> Pension rights, unlike tenure of civil service employment, are deferred compensation earned immediately upon the performance of services for a public employer "[and] cannot be destroyed . . . without impairing a contractual obligation.

*Miller v. State, supra* at 814.

The plaintiff in *Miller* had a right to a pension that vested upon acceptance of employment. Concerning that right the court said:

> Although his right to a pension based on this system was vested, plaintiff was not assured of receiving maximum pension benefits. His right to receive such benefits was subject to conditions and contingencies; specifically, that he remain in state employment until age 70. Plaintiff failed to satisfy that condition since he was lawfully placed on retirement at age 67. Thus, his right to a maximum pension based on retirement at age 70 never matured.

*Miller v. State, supra* at 817.

The court concluded by stating:

> It avails plaintiff nothing that he failed to work until age 70 because the Legislature forced him to retire at age 67. Although he was entitled to earn increased pension

benefits so long as he remained in state employment, as we explained above, plaintiff had no vested contractual right to continue working for any specified period of time. In short, his membership in PERS did not confer on him the right to remain in state employment beyond age 67 and he had no constitutionally protected right to continue in his position until age 70 in order to receive a larger retirement allowance. . . .

As we stated in *Kern* v. *City of Long Beach, supra,* 29 Cal. 2d 848, 853 [179 P.2d 799, 802], "The fact that a pension right is vested will not, of course, prevent its loss upon the occurrence of a condition subsequent such as lawful termination of employment before completion of the period of service designated in the pension plan."

. . .

To recapitulate, we hold that plaintiff had no vested contractual right to remain in public employment beyond the age of retirement established by the Legislature. Upon being required by law to retire at age 67 rather than age 70, plaintiff suffered no impairment of vested pension rights since he had no constitutionally protected right to remain in employment until he had earned a larger pension at age 70.

*Miller v. State, supra* at 817–18.

Although the majority opinion disagrees with the *Miller* rationale, it cites no authority directly on point to support its disagreement. Apparently, no such authority has been found. Furthermore, it pays scant and inadequate attention to the many other cases whose rationale accords with that of *Miller.*

For example, in *Peters v. Springfield,* 57 Ill. 2d 142, 311 N.E.2d 107 (1974), a city ordinance had reduced the mandatory retirement age of firemen from 63 to 60. The firemen contended the ordinance impaired and diminished their pension benefits in contravention of the state constitutional prohibition against impairment of government pension benefits, which created an enforceable contract relationship. The court rejected their claim, holding the constitutional provision

was not intended, and did not serve, to prevent the defendant City from reducing the maximum retirement

age, even though the reduction might affect the pensions which plaintiffs would ultimately have received. *Peters v. Springfield, supra* at 152.

Other cases are equally clear in making the distinction between retirement as a condition of tenure, a term of employment within the control of the governmental authority, and pension rights governed by contract. In *McCarthy v. Sheriff of Suffolk County,* 322 N.E.2d 758 (Mass. 1975), Massachusetts state employees argued a reduction in the mandatory retirement age from 70 to 65 impaired their pension rights. The court agreed that the pension statute created a contract between employees and the state. It rejected the contention, though, that the contract obligation included the right of the employee to work until age 70.

> [N]o such obligation was intended, nor was such created, by enactment of [the statute assuring pension rights]. Accordingly, no contractual obligations will be impaired by application of [the amended mandatory retirement age statute] to the plaintiffs, and such application will not violate either the Massachusetts or the Federal Constitution.

*McCarthy v. Sheriff of Suffolk County, supra* at 763.

The court in *Gardner v. Nation,* 522 P.2d 1281 (Wyo. 1974) came to the same conclusion when a municipal employee complained the imposition of a mandatory retirement age violated his preexisting contract rights under his pension plan. The court said:

> Whatever rights plaintiff had under the pension plan, we do not think that they went so far as to deny the legislature the right to regulate the terms of the employment and by a nondiscriminatory enactment to place a time limit upon the right to continued employment.

*Gardner v. Nation, supra* at 1284.

Similarly, in *Coopersmith v. Denver,* 156 Colo. 469, 399 P.2d 943 (1965) the court rejected the contention that imposition of a mandatory retirement age impaired vested contract rights.

At the outset, we feel it is necessary to distinguish between pension rights and rights, if any, as to length of employment, and whether the latter is subject to any contract restrictions. The specific rights that plaintiffs claim are being impaired are those of pension benefits and those protected under the civil service act which assertedly thereby created a contractual relationship. We do not agree with either contention. No showing was made in the trial court, and none is made here, indicating that plaintiffs will receive a reduced pension or that they will forfeit or lose any pension rights due to involuntary retirement as applied to them by virtue of the challenged amendment. . . . To hold that an employee can work as long as he desires, without an express contract to that effect, would destroy the concept of employer–employee entirely and make the administrated the administrator. To state the proposal is to refute it. We thus find no merit to this issue. Plaintiffs still have the right to receive pension benefits to the same extent they did before the amendment was approved.

*Coopersmith v. Denver, supra* at 478. The distinction is again seen in *Boyle v. Philadelphia,* 338 Pa. 129, 12 A.2d 43 (1940).

[B]y the establishment of a pension or retirement pay the legislature does not guarantee to public employees a tenure for the period of service specified as necessary to fulfill the pension requirements, nor does it intend thereby to interfere with the full right of a municipality to dismiss its employees for cause or for reasons of efficiency or economy. Underlying all pension legislation is the necessary principle that one who has been legally discharged prior to serving the prescribed term cannot share in the pension or retirement benefits.

*Boyle v. Philadelphia, supra* at 133. *See also Humbeutel v. New York,* 308 N.Y. 904, 126 N.E.2d 569 (1955), which was explained in *Donner v. New York City Employees' Retirement Sys.,* 33 N.Y.2d 413, 353 N.Y.S.2d 428, 308 N.E.2d 896 (1974).

In *Humbeutel* we upheld a statute imposing a mandatory retirement age of 63 upon city policemen . . . [T]he changes authorized in [*Humbeutel*] primarily affected, and were directed at, terms of employment, and had only .

incidental effects on contractual retirement benefits. . . . [O]nly the effective date of retirement was involved, not the diminution of retirement benefits.

*Donner v. New York City Employees' Retirement Sys., supra* at 417.

A federal court made this same point in *Kingston v. McLaughlin,* 359 F. Supp. 25 (D. Mass. 1972). In that case a Massachusetts state employee sought an injunction against imposition of a mandatory retirement age, contending, *inter alia,* it created an impairment of their employment contract. The court rejected the claim and upheld the mandatory retirement provision.

> [T]he new amendment does not impair any of their financial arrangements with the Commonwealth. Rather, it merely takes away their option of when to retire.
>
> It is this option to determine voluntarily when to retire, when to cease drawing full salary and to commence receiving the lesser pension payments, that is claimed as an inchoate right or "entitlement" protected by the alleged contract with the Commonwealth. . . . But, if there is no basic vested right to office, we cannot see how any inchoate right to choose when to retire from that office can be protected against. constitutional amendment. Plaintiffs' sophisticated argument . . . is but an assertion that tenure in office, which concededly has not been directly guaranteed, can be indirectly guaranteed by recognition of the "inchoate right" to determine when to cease drawing full salary.

*Kingston v. McLaughlin, supra* at 30. This case was affirmed by the United States Supreme Court. *Kingston v. McLaughlin,* 411 U.S. 923, 36 L. Ed. 2d 388, 93 S. Ct. 1900 (1973) (affirming without opinion).

We find the force of this uncontradicted case law compelling. The proper analysis. is that King County has changed a term of employment of its own employees, namely tenure, by imposing a mandatory retirement age. This action did not impair Ms. Eagan's pension rights under PERS. The majority has cited no case in point, and we know of none, supporting its contradictory argument

that pension rights in this case include the right to tenure.[1]

Our courts have held that a local government may prescribe conditions for municipal office in addition to those prescribed by other statute. *State ex rel. Isham v. Spokane,* 2 Wn.2d 392, 98 P.2d 306 (1940); *State ex rel. Griffiths v. Superior Court,* 177 Wash. 619, 33 P.2d 94 (1934). Moreover, the Attorney General has taken the view that the Washington Public Employees' Retirement System was not intended to guarantee length of service. Attorney General Opinion, September 11, 1972.

The mandatory retirement provision in question did not lessen the requirements of the pension act. Petitioner was still entitled to the pension accrued prior to the arrival of her mandatory retirement date. She was not, however, entitled to add to her retirement benefits by working between the ages of 65 and 70, because she had no tenure right to do so. I can only conclude it was no breach of contract for petitioner to be required to retire.

The majority contends, however, that all the cases set out above are wrong because they characterize the issue as "a matter of tenure rather than pension rights." Majority opinion, page 251. If we simply change the characterization to one of pension rights, we are told, the result is completely different. In so doing the majority rejects the long prevailing and obviously sound analysis of the relationship between tenure and pension rights, and by a mere turn of phrase unsupported even by *Bakenhus* reverses the result reached by every court known to have considered the question. One of the decisions discussed above, *Kingston v. McLaughlin,* was affirmed by the United States Supreme Court. That decision directly contradicts the majority, and

---

[1]*Finch v. Department of Pub. Welfare,* 80 Ariz. 226, 295 P.2d 846 (1956), heavily relied upon by Ms. Eagan as a case "very similar" to the instant case, is distinguishable. In *Finch* the problem of whether pension benefits included tenure rights was not involved. The state agency claimed inherent power to mandatorily retire an employee before the compulsory retirement age set by statute. The court refused to recognize any such power in face of the statutory language fixing the compulsory retirement age.

supports the position taken in this dissent. Such authority cannot lightly be disregarded.

The practical result of the majority's opinion is that no government agency will dare employ any person on a terminable at will basis, even though the majority concedes such a designation is a condition of employment unrelated to pension rights. Under the majority rule any employee ostensibly terminable at will would nonetheless have a reasonable expectation, based on a contract right, of remaining in employment until the age of 70. Such a rule disregards the essential nature of employment which is terminable at will. Moreover, it converts public employment, which is not a vested property right under the decisions of this court in *Nostrand v. Little,* 58 Wn.2d 111, 361 P.2d 551 (1961) and *Yantsin v. Aberdeen,* 54 Wn.2d 787, 345 P.2d 178 (1959), into a contractual property interest. This dramatic change in the nature of public employment is a matter for the legislature, not for this court.

I dissent.

UTTER, J., concurs with HOROWITZ, J.